# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

99.5099

---

**FIRST PREFERENCE PRODUCTS CORPORATION, CEREAL BYPRODUCTS COMPANY**

    **Plaintiff,**

**VS.**

**POWERS & STINSON, a Mississippi Corporation; POWERS & STINSON, a Tennessee Corporation, NATIONAL BANKERS TRUST CORPORATION, THE TRANSPORT FIRM, INC., E.A. Nichols, Esq., Individually, THE LAW OFFICE OF E.A. NICHOLS, P.C, and NICHOLS LAW OFFICE, P.C.**

    **Defendants.**

**NO. 2-13-CV-02515 - SHM/dkv**

---

## SECOND AMENDED CLASS ACTION COMPLAINT

---

Plaintiffs, First Preference Products Corporation and Cereal Byproducts Company, on behalf of themselves individually and on behalf of all other similarly situated parties, by and through their designated attorneys, file the following Second Amended Complaint. All allegations in this Second Amended Complaint are based upon the investigation of counsel, excepting specific allegations pertaining to the named Plaintiffs which may be based upon personal knowledge. At the date of this Second Amended Complaint, very limited written discovery has been conducted, and no depositions have been taken As a result, it is likely that once the discovery process is underway, the named Plaintiffs will seek leave to amend this Second Amended Complaint to add new factual allegations and/or new claims.

**INTRODUCTION**

This cause of action involves a multi-year, continuous scheme by Defendants to engage in improper, extortionate and fraudulent commercial debt collection.  The named Defendants have collectively been involved in the multi-year scheme to extort alleged commercial debt collection settlements from out-of-state corporations engaged in purely out-of-state transactions. Defendants have collectively established a scheme whereby non-attorney debt collectors threaten, intimidate and extort out-of-state corporations, including the named Plaintiffs, into settling alleged commercial debts. As a part of the continuing scheme, the debt collector Defendants threatened to file and/or have filed hundreds of knowingly improper debt collection actions on sworn account in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis. Defendants have furthered the scheme by threatening to file these improper debt collection suits despite clear notice and knowledge that the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis is an improper venue and lacks personal jurisdiction over these hundreds of threatened and/or filed debt collection actions. Defendants have furthered their scheme by threatening and/or having their attorneys intentionally escalate litigation costs and expenses beyond the amount of the alleged commercial debts, by threatening to report knowingly improper and fraudulently obtained default judgments to credit bureaus and agencies, and by threatening to and/or affecting Plaintiffs' ability to engage in interstate commerce. Defendants have repeatedly furthered the continuing, multi-year scheme by filing fraudulent affidavits with the Court, as well as by filing knowingly fraudulent and improper statements of Jurisdiction to extort and intimidate out-of-state corporations. Defendants have collectively taken default judgments of hundreds of thousands of dollars, caused Plaintiffs and putative class members to spend thousands of dollars in unnecessary litigation expenses and

2

fees, and have collected unknown thousands of dollars from out-of-state corporations who were intimated and/or extorted into settling with Defendants in lieu of being forced to engage in improper litigation in an inconvenient location in another state hundreds or thousands of miles from their location over a limited amount of money.

## THE PARTIES

1)      Plaintiff First Preference Products Corporation (hereinafter referred to as "First Preference") is a corporation with a principal place of business in Salisbury, Connecticut.

2)      Plaintiff Cereal Byproducts Company (hereinafter "Cereal Byproducts") is a corporation with a principal place of business in Mount Prospect, Illinois.

3)      Defendant National Bankers Trust Corporation (hereinafter referred to as "National Bankers Trust") is a corporation incorporated under the laws of the State of Tennessee, with its principal place of business located at 8245 Tournament Drive, Suite 120, Memphis, Tennessee 38125-8872. Service of process may be accomplished on National Bankers Trust via its registered agent Meredith Lucas, located at 8245 Tournament Drive, Suite 120, Memphis, Tennessee 38125-8872.

4)      Powers & Stinson (hereinafter "Powers & Stinson, a Tennessee Corporation"), is a Tennessee corporation incorporated under the laws of the State of Tennessee with its principal office at 4728 Spottswood Avenue, Memphis, Tennessee 38117, and is a debt acquision company. Service of process may be accomplished by serving its registered agent Donald McKnatt, located at 4728 Spottswood Avenue, Suite 373, Memphis, Tennessee 38117-4817.

3

5)     Powers & Stinson (hereinafter "Powers & Stinson, a Mississippi Corporation"), is a Mississippi corporation incorporated under the laws of the State of Mississippi with its principal office at 384 East Goodman Road Suite 242, Southaven, MS 38671, and is a debt collection company. Service of process may be accomplished by serving its registered agent Barry Bridgforth, Jr., located at 5293 Getwell Road, Southaven. MS 38672.

6)     The Transport Firm, Inc. (hereinafter "Transport Firm"), a Tennessee corporation incorporated under the laws of the State of Tennessee with its principal office at 4728 Spottswood Avenue, Suite 373, Memphis, Tennessee 38117. Service of process may be accomplished by serving its registered agent Donald McKnatt, located at 4728 Spottswood Avenue, Suite 373, Memphis, Tennessee 38117-4817.

7)     E.A. Nichols is a licensed Tennessee attorney who previously practiced in Memphis, Shelby County, Tennessee at times relevant to this Second Amended Complaint. Service may be accomplished by serving E.A. "Charlie" Nichols at 1776 Pleasant Plain Road Fairfield, IA 52556-8757.

8)     The Law Office of E.A. Nichols, Inc. is a Tennessee corporation that was incorporated under the laws of the State of Tennessee with its principal office at 4728 Spottswood Avenue, Suite 373, Memphis, Tennessee 38117.  Service of process may be accomplished by serving its registered agent E.A. Nichols located at 1776 Pleasant Plain Road Fairfield, IA 52556-8757.

9)     The Nichols Law Firm is a Tennessee corporation that was incorporated under the laws of the State of Tennessee with its principle office at 4728 Spottswood Avenue, Suite 373,

Memphis, Tennessee 38117.  Service of process may be accomplished by serving its registered agent E.A. Nichols located at 1776 Pleasant Plain Road Fairfield, IA 52556-8757.

## JURISDICTION AND VENUE

10)     This Court has original subject matter jurisdiction over this action pursuant to 28 USC § 1331 and 28 U.S.C. §1367(a).

11)     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1), §1391(b)(2) and §1391(b)(3) on the grounds that Defendants are both located and/or have offices in this judicial district and all or a substantial portion of the acts giving rise to this action, including the filing of Civil Actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County, occurred in this judicial district.

## FACTUAL ALLEGATIONS

### *The Defendants and their relationships*

12)     Defendant National Bankers Trust describes itself in its promotional material as "a factoring company exclusively for the trucking industry."

13)     Despite filing numerous debt collection actions in Tennessee on its own behalf, upon information and belief, National Bankers Trust does not have and never has had a valid Tennessee collection service license issued by the Tennessee Collection Service Board pursuant to T.C.A. §62-20-105(a).

14)     According to its website (www.freightattorneys.com), Defendant Powers & Stinson is a "professional recovery firm" that advertises that itself as "the freight bill collection

specialist." Powers & Stinson advertises itself as "a professional collection firm with an in-house transportation attorney and a nationwide network of transportation attorneys. Together, we can assist in collecting your debts in all fifty states and Canada."

15)     Despite utilizing an e-mail address of www.freightattorneys.com, Powers & Stinson is not a law firm.

16)     Upon information and belief, neither Defendant Powers and Stinson, a Mississippi Corporation, nor Defendant Powers & Stinson, a Tennessee corporation, had a valid Tennessee collection service license issued by the Tennessee Collection Service Board pursuant to T.C.A. §62-20-105(a) at any time relevant to this lawsuit prior to Powers & Stinson, a Mississippi Corporation, applying for a license received by the State of Tennessee in March 2014 after this action was filed, despite the fact that Defendants Powers & Stinson filed hundreds of debt collection actions on sworn account in the General Sessions Court of Shelby County, Tennessee since incorporating separately in Mississippi and Tennessee in 2011. Upon information and belief, Defendant Powers & Stinson, a Tennessee Corporation, has never possessed or ever applied for a valid Tennessee collection service license issued by the Tennessee Collection Service Board pursuant to T.C.A. §62-20-105(a).

17)     Defendant E.A. Nichols was the corporate counsel and an employee of National Bankers Trust from March 15, 2010 – May 10, 2011, and again from June 20, 2011 – August 19, 2011.

18) National Bankers Trust in-house corporate counsel and employee E.A. Nichols incorporated Defendant The Transport Firm, Inc. on March 29, 2011 in the State of Tennessee. (See Exhibit "A", Charter of The Transport Firm, Inc.).

19) Powers & Stinson, Inc and Defendant The Transport Firm are the same legal entity

20) National Bankers Trust In-house Corporate Counsel and Employee Defendant E.A. Nichols incorporated "The Nichols Law Firm." and/or "The Law Office of E.A. Nichols, P.C." on or about March 22, 2011. See Exhibit "B", Charter of the Law Office of E.A. Nichols, P.C.)

21) Defendant E.A. Nichols amended the name of Defendant "The Nichols Law Firm" to Defendant "The Law Office of E.A. Nichols, P.C." on February 13, 2012.

22) Defendant National Bankers Trust and Defendant The Law Offices of E.A. Nichols, P.C. maintained, shared and worked out of the same principal office location in Tennessee in 2011. Id.

23) Upon information and belief, Powers & Stinson was incorporated in Mississippi on June 16, 2011.

24) Defendant National Bankers Trust is the sole secured party on Defendant Powers & Stinson's 2011 UCC-1 Financing Statement filed in the State of Mississippi covering all assets of Powers & Stinson, a Mississippi Corporation. (See Exhibit "C" Powers & Stinson August 1, 2011 UCC Financing Statement)

7

25)     Defendant Powers & Stinson, a Mississippi Corporation, and Defendant Powers & Stinson, a Tennessee Corporation, have admitted in their discovery responses that they are separate entities. (See  "DEFENDANTS POWERS & STINSON, INC. AND THE TRANSPORT FIRM, INC.'S RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSIONS", No. 22)

26)     Eight days after Powers & Stinson, a Mississippi Corporation, was incorporated, on or about June 24, 2011, Defendant National Bankers Trust and Defendant Powers & Stinson entered into a "Client Service Agreement". See Exhibit "D", June 24, 2011 "Client Service Agreement" between National Bankers Trust and Powers & Stinson.

27)     Defendant E.A. Nichols was In-house Corporate Counsel for National Bankers Trust when Defendant National Bankers Trust entered into its Client Service Agreement with Defendant Powers & Stinson.

28)     The June 2011 Client Service Agreement was between Powers & Stinson ("Agency") and National Bankers Trust ("Client") established Powers & Stinson as the agent for National Bankers Trust for the pursuit and collection of debts "as authorized" by National Bankers Trust.

29)     In the June 2011 Client Service Agreement, National Bankers Trust authorized that all debts would be collected by agent Powers & Stinson on behalf of Client National Bankers Trust. Id.

30)     Defendant Powers & Stinson, a Tennessee corporation, had a business address of 4728 Spottswood Avenue, Memphis, TN Suite 373, Memphis, TN

31) E.A. Nichols, and Defendant Nichols Law Firm and/or the Law Offices of E.A. Nichols also maintained the exact same business address of 4728 Spottswood Avenue, Memphis, TN Suite 373 in Tennessee as Defendant Powers & Stinson.

32)   Upon information and belief, the address of 4728 Spottswood Avenue, Suite 373 Memphis, TN is a mailbox in a UPS store utilized jointly by Defendants Powers & Stinson, The Transport Firm, E.A. Nichols, the Nichols Law Firm and Law Office of E.A. Nichols to further their debt collection and RICO scheme. (See Exhibit "E", e-mail correspondence from E.A. Nichols)

33) Defendant Powers & Stinson, Inc., a Tennessee corporation, is a debt buying company located in Tennessee.  (See Exhibit "F", January 8, 2013 email correspondence from "Jim Anderson", Vice President of Operations for Powers & Stinson).

34)   Defendant Powers & Stinson, Inc., a Mississippi corporation, is a separate debt collection agency located in Mississippi. (Id.).

35)   Under the Defendants' multi-year debt collection scheme, alleged commercial debts were first acquired by Powers & Stinson, a Tennessee Corporation, from National Bankers Trust and other clients, and then those alleged debts were assigned  to Defendant Powers & Stinson, a Mississippi Corporation, for collection. (Id.; See also Exhibit "G", April 1, 2013 e-mail from Powers & Stinson to Brooks Stone Ranch.

36)   After being incorporated and coming into existence in 2011, Powers & Stinson, a Tennessee Corporation, acquired the alleged debt, Powers & Stinson, a Mississippi Corporation, would separately handle the debt collection portion of the scheme. Id.

9

37)     Prior to the incorporation of Powers & Stinson, National Bankers Trust utilized either in-house counsel or outside counsel for the litigation threat portion of the overall debt collection scheme

38)     Non-Attorney debt collectors at Powers & Stinson then furthered the scheme by sending via e-mail and mail correspondence to the out-of-state corporation extortionate threats to obtain a settlement. Repeatedly, Class Plaintiffs and putative class members denied owing any debt in correspondence with non-attorneys at Powers & Stinson; in response, non-attorney debt collectors at Powers & Stinson made extortionate threats to file knowingly improper debt collection actions in Shelby County, Tennessee General Sessions Court despite knowledge and notice that the court was an improper venue and lacked personal jurisdiction.

39)     In 2011, while simultaneously (1) an employee and in-house corporate counsel for National Bankers Trust, (2) outside counsel for Powers & Stinson with a Powers & Stinson e-mail account, and (3) managing attorney of The Nichols Law Firm, Defendant E.A. Nichols filed multiple improper Civil Actions on sworn account in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County against out-of-state corporations in support of Defendants' continuing debt collection scheme (See also, General Sessions Civil Warrant No. 1504617, Powers & Stinson v. Southern Track; General Sessions Civil Warrant No. 1504673, Powers & Stinson v. Polyreps, General Sessions Civil Warrant No. 1504617, Powers & Stinson v. Ruiz Foods; General Sessions Civil Warrant No. 1509852 Powers & Stinson v. American Fashion Clothing)

**Factual allegations involving Individual and Class Plaintiff Cereal ByProducts**

10

40) Upon information and belief, National Bankers Trust acquired an alleged debt allegedly owed by Cereal ByProducts.

41) Pursuant to the June 2011 Client Service Agreement between Defendant National Bankers Trust and Defendant Powers & Stinson, Defendant National Bankers Trust authorized Defendant Powers & Stinson, a Tennessee Corporation, to acquire the debt to be collected from National Bankers Trust and authorized Powers & Stinson, a Mississippi Corporation to act as National Bankers Trust's agent in its debt collection efforts against Cereal ByProducts.

42) Defendant Powers & Stinson, a Tennessee Corporation, and Powers & Stinson, a Mississippi Corporation, were at all times the agents of Defendant National Bankers Trust in its debt collection scheme against Cereal ByProducts. Id.

43)     According to the documentation possessed and provided by Defendants to Cereal ByProducts by email and fax, National Bankers Trust and Powers & Stinson were pursuing a debt collection for Shelly Transportation of Minneapolis, Minnesota for a shipment from Oklahoma to New Jersey. (See Exhibit "I" Shipment documentation).

44) Non-attorney debt collectors at Powers & Stinson continually sent correspondence to Cereal ByProducts in Illinois making extortionate threats of having counsel file a debt collection action in Shelby County, Tennessee against an Illinois corporation for a shipment from Oklahoma to New Jersey.

45) "Jim Anderson" is a fictitious name used by Powers & Stinson debt collector James Annestedt in both e-mail and mail correspondence and in sworn affidavits filed in the Shelby County General Sessions Court.

11

46) On August 1, 2011, non-attorney debt collector "Jim Anderson" sent demand correspondence to Cereal ByProducts demanding $2350.00 (Id.)

47) On August 9, 2011, debt collector and non-lawyer "Jim Anderson" of Powers & Stinson sent correspondence on behalf of National Bankers Trust and Powers & Stinson to Cereal Byproducts Co. which contained the following extortionate threat:

> Suit will be filed in Shelby County, Tennessee. Our attorney, E.A. "Charlie" Nichols, he works on contingency and it costs us $97.50 to file a civil warrant. The Tennessee licensed attorney that you will be required to hire to fight jurisdiction and/or just defend your case will be charging you by the hour and their retainer fee alone will cost at least $3000.00. If and when your local council files a motion to dismiss for Jurisdiction our attorney will file for a discovery.
>
> I can assure you, the cost of litigation will exceed the amount owed to an unforeseeable amount, even if you were to win. We do not file suit on any cases we feel we may not win.
>
> Please advise.
>
> Best regards,
> Jim Anderson
> 384 E. Goodman Rd. - Suite 242
> Southaven, MS 38671
> Office: 662-253-8505
> Fax : 662-404-7023
> jim@freightattorneys.com

(See Exhibit "J" to Complaint, August 9, 2011 correspondence to Cereal Byproducts)

48)    On August 24, 2011, non-lawyer debt collector James Annestedt (aka "Jim Anderson") sent correspondence to Cereal Byproducts again indicating he was the contact person while attaching the improper General Sessions Civil Warrant. (See Exhibit "K", August 24, 2011 correspondence to Cereal ByProducts)

49)    On October 6, 2011, Defendant E.A. Nichols, attorney for Powers & Stinson and National Bankers Trust, furthering the debt collection scheme outlined by "Jim Anderson" in earlier correspondence above, filed a debt collection suit against Cereal Byproducts Corp. in the General Sessions Court of the State of Tennessee at Memphis, Shelby County, <u>National Bankers Trust v Cereal Byproducts,</u> Civil Warrant No. 1519394 and had it mailed to Cereal By-Products in the State of Illinois. (See Exhibit "L", General Sessions Civil Warrant No. 1519394).

50)    On October 6, 2011, as detailed in the August 9, 2011 extortionate letter,  the General Sessions Clerk for Shelby County, Tennessee received a payment of $97.50 in General Sessions Civil Action 1519394.

51)    Attached to that General Sessions Civil Warrant was an Affidavit of Sworn Account by Donald McKnatt, identified as the President of Powers & Stinson  The Affidavit indicated that Powers & Stinson had been retained by Defendant National Bankers Trust Corporation for debt collection actions. <u>Id.</u>

52)    In response to this debt collection action filed in Shelby County, Tennessee, Cereal Byproducts retained at its own expense licensed Tennessee counsel to represent it and protect its interests against entry of a default judgment in the General Sessions debt collection action filed in Shelby County, Tennessee.

53)    On November 22,  2011, Cereal Byproducts Co. filed "Defendant's Motion to Dismiss for Improper Venue, Lack of Personal Jurisdiction and Lack of Subject Matter Jurisdiction" in General Sessions Civil Action 1519394.  (See Exhibit "M" to Second Amended

Complaint, "Defendant's Motion to Dismiss for Improper Venue, Lack of Personal Jurisdiction and Lack of Subject Matter Jurisdiction").

54)    Cereal Byproducts' Motion to Dismiss was argued against by Defendant E.A. Nichols, Powers & Stinson and National Bankers Trust's counsel, during a hearing before Judge Lynn Cobb in Division 1 of General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County on January 3, 2012. After argument, the Court ordered that National Bankers Trust and Powers & Stinson's debt collection action be dismissed.

55)    On January 6, 2012, the General Sessions Court entered the "Order granting Defendant Cereal Byproducts Co's Motion to Dismiss for Improper Venue Pursuant to Tennessee Code Annotated §20-4-101". See Exhibit "N" to Second Amended Complaint.

56) The "Order granting Defendant Cereal Byproducts Co's Motion to Dismiss for Improper Venue Pursuant to Tennessee Code Annotated §20-4-101" was signed by Defendant E.A. Nichols as the "Attorney for National Bankers Trust Corporation". Id.

57) Based upon that hearing and Order, National Bankers Trust and Powers & Stinson had knowledge and both were placed on notice that the Shelby County General Sessions Court was an improper venue for a debt collection action against an out-of-state corporation for an out-of-state transaction.

58)    Defendants National Bankers Trust and Powers & Stinson did not file an appeal of the Order of Dismissal for improper venue entered by Judge Lynn Cobb of Division 1 of General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County

14

## Factual Allegations involving Individual and Class Plaintiff First Preference

59)     On or about July 22, 2011, National Bankers Trust Corporation entered into a Notice of Assignment and Lien with carrier Ship Right Trucking, Inc. which stated that "all accounts receivable, past, present and future are assigned and payable to National Bankers Trust". (See Exhibit "O", Notice of Assignment and Lien).

60)     According to the documentation possessed  and provided by Defendants to First Preference Products, Ship Right Trucking, Inc. is located in Allentown, Pennsylvania. The shipment for which recovery of outstanding freight charges was sought involved a shipment from Wixon, Michigan to Plaintiff's manufacturing facility in Hudson, New York. Id.

61) Pursuant to the June 2011 Client Service Agreement between Defendant National Bankers Trust and Defendant Powers & Stinson, Defendant National Bankers Trust authorized Defendant Powers & Stinson, a Tennessee Corporation, to acquire the debt to be collected from National Bankers Trust and authorized Powers & Stinson, a Mississippi Corporation, to act as its agent in its debt collection efforts against Cereal ByProducts.

62) "Nick Seaver" is another fictious name used by debt collectors at Powers & Stinson as part of its debt collection scheme.

63) Non-attorney debt collectors at Powers & Stinson began sending correspondence to Plaintiff as part of the debt collection scheme.

64)     On November 10, 2011, debt collector and non-lawyer "Nick Seaver" of Defendant Powers & Stinson sent correspondence to First Preference Products. In  that

correspondence, Powers & Stinson was identified as representing National Bankers Trust. The November 10, 2011 correspondence indicated that Powers & Stinson had been retained by National Bankers Trust "to assist in the recovery of its outstanding freight charge ($4,800.00) and to take whatever action is necessary to collect the unpaid freight charges." (See Exhibit "P", November 10, 2011 correspondence from Nick Seaver of Powers & Stinson).

65) By its own admission, Defendant Powers & Stinson was the agent of Defendant National Bankers Trust in its debt collection scheme against First Preference Products. Id.

66)     On November 17, 2011, debt collector and non-lawyer "Nick Seaver" of Powers & Stinson sent additional e-mail correspondence essentially identical to that sent to Cereal ByProducts 3 months earlier (See Exhibit "J") stating:

> If necessary, suit will be filed in Shelby County, Tennessee by our attorney E.A. "Charlie" Nichols. He works for us on contingency and it will only cost us $97.50 to file a Civil Warrant. The Tennessee licensed attorney that you will be required to hire to fight jurisdiction and/or just defend your case will be charging you by the hour and their retainer fee alone will cost **at least** $3,000.00. I**f your local counsel files a Motion to dismiss for jurisdiction, our attorney will file for a discovery which will require even more time and money. The cost of litigation will vastly exceed the amount owed, even if you were to win.**
>
> My client is willing to make a one time settlement offer for $4,000.00. Please take this offer to your client. If they accept our offer, I will prepare a settlement and release agreement so we can just put this all behind us.

(See Exhibit "Q" to Second Amended Complaint, November 17, 2011 correspondence from "Nick Seaver" of Powers & Stinson)(emphasis added)

16

67)     On December 28, 2011, Powers & Stinson and National Bankers Trust filed a debt collection action against First Preference Products Corp. in the General Sessions Court of the State of Tennessee at Memphis, Shelby County, Civil Warrant No. 1534617 and had it mailed to First Preference Products Corporation. (See Exhibit "R" to Second Amended Complaint, General Sessions Civil Warrant No. 1534617).

68)     Attached to that General Sessions Civil Warrant was an Affidavit of Sworn Account by Donald McKnatt, President of Powers & Stinson the Affidavit indicated that Defendant Powers & Stinson had been retained by Defendant National Bankers Trust Corporation for debt collection actions.  The Affidavit of Sworn Account sought $4,800.00 plus costs, interest and attorney's fees. Id.

69)     On December 29, 2011, the day after the General Sessions Civil Action was filed, debt collector and non-lawyer "Jim Anderson" of Powers & Stinson continued the debt collection scheme by sending an e-mail correspondence notifying First Preference of the filing of the lawsuit. (See Exhibit "S" to Complaint, December 29, 2011 correspondence from Jim Anderson of Powers & Stinson).

70)     In that correspondence, debt collector and non-lawyer "Jim Anderson" of Powers & Stinson claimed that "my colleague, Nick Seaver, turned this over to our legal department for litigation." "Jim Anderson" is not an attorney. Id.

71) In that correspondence, debt collector and non-lawyer "Jim Anderson" of Powers & Stinson made it clear that the lawsuit was merely a part of the overall debt collection scheme, indicating that all communication from First Preference was to go only through non-lawyer  debt

collector "Jim Anderson" and not through legal counsel despite the fact that suit had been filed, stating:

> If our offer is not accepted within five (5) business days, our attorney will proceed with the litigation in Shelby County and settlement will no longer be an option at this point.
>
> **My attorney has been advised not to discuss this suit with anyone prior to court.   I will be your contact regarding this matter up until the first court date listed on the documents.**
>
> Id.

72)    On December 30, 2011, as detailed in the November 17, 2011 extortionate letter, the General Sessions Clerk for Shelby County, Tennessee received a payment of $97.50 in General Sessions Civil Action 1534617.

73)    In response to this Civil Action filed in Shelby County, Tennessee by Defendants, First Preference Products was forced to retain at its own expense licensed Tennessee counsel to represent it and protect its interests against entry of a default judgment in the General Sessions debt collection action filed in Shelby County, Tennessee.

74)    Non-attorney debt collector James Annestedt (a/k/a "Jim Anderson") continued to pursue the debt collection with correspondence to First Preference throughout January 2012. In a January 30, 2012 correspondence to First Preference, non-attorney debt collector James Annestedt made the following threat: "If we do not have this resolved by the end of the day tomorrow we will no longer settle." (See Exhibit "T", January 30, 2012 correspondence to First Preference)

75)     On February 1, 2012, First Preference Products filed "Defendant's Motion to Dismiss for Improper Venue and Lack of Personal Jurisdiction", in General Sessions Civil Action 1534617.  (See Exhibit "U", "Defendant's Motion to Dismiss for Improper Venue and Lack of Personal Jurisdiction").

76)     On February 9, 2012, as threatened in the November 17, 2011 extortionate letter from non-attorney debt collector "Nick Seaver", (See Exhibit "2"), National Bankers Trust Corporation and Powers & Stinson filed "Plaintiff's First Set of Interrogatories to Defendant." to purposely and improperly escalate First Preference's litigation costs and expenses in an effort to extort a debt collection settlement. (See Exhibit "V" to Complaint, "Plaintiff's First Set of Interrogatories to Defendant").

77) The named Plaintiff in "Plaintiffs First Set of Interrogatories to Defendant" was National Bankers Trust Corporation in care of Powers & Stinson. Id.

78)     On March 15, 2012, Judge John Donald of Division III of Shelby County General Session Court set First Preference's "Defendant's Motion to Dismiss for Improper Venue and Lack of Personal Jurisdiction" for an evidentiary hearing on April 15, 2012.

79) Two days immediately prior to the hearing, facing a Motion to Dismiss to which they had no defense, National Bankers Trust and Powers & Stinson agreed to dismiss the action for improper venue and for lack of personal jurisdiction. (See Exhibit "W", April 3, 2012 e-mail correspondence from Powers & Stinson and National Bankers Trust counsel)

80)     On April 5, 2012, the "Consent Order Granting Defendant First Preference Products Corp's Motion to Dismiss for Improper Venue Pursuant to Tennessee Code Annotated

19

§20-4-101 and for Lack of Personal Jurisdiction Pursuant to Tennessee Code Annotated § 20-2-214" was signed by Judge John Donald in General Sessions Civil Action 1534617. (See Exhibit "X" to Second Amended Complaint).

81) Defendants National Bankers Trust and Powers & Stinson had clear knowledge and were put on clear notice that the General Sessions Court of Shelby County, Tennessee lacked personal jurisdiction and was an improper venue for debt collection actions against out-of-state corporations involving out-of-state-transactions through the Consent Order agreed to and signed by Powers & Stinson and National Bankers Trust.

82)     Defendants National Bankers Trust and Powers & Stinson did not file an appeal of the Order of Dismissal consented to by National Bankers Trust and Powers & Stinson based upon the improper venue and lack of personal jurisdiction of the General Sessions Court of Shelby County, Tennessee.

## CLASS ACTION ALLEGATIONS

83) Since 2008, Defendants in multiple and continuous enterprises have engaged in a multi-year, extortionate debt collection scheme. Non-attorney debt collectors have repeatedly used extortionate and improper threats of filing knowingly improper lawsuits in Shelby County, Tennessee, have threatened purposely escalated litigation costs and expenses, and have threatened to report improperly obtained default judgments to credit bureaus and agencies to extort settlements. The attorney Defendants have threatened to and/or had filed hundreds of knowingly fraudulent and improper General Sessions actions against at least hundreds, if not thousands, of out-of-state corporations despite clear knowledge and notice on the part of all Defendants that the General Sessions Court of Shelby County, Tennessee was an improper venue

20

for those actions and lacked personal jurisdiction. The attorney Defendants further made knowingly false statements regarding venue and personal jurisdiction in both court and non-court filings to intimidate, defraud and extort debt collection settlements from out-of-state corporations. In every known instance since 2009 that an out-of-state corporation has challenged venue and/or personal jurisdiction in the General Sessions Court of Shelby County, Tennessee, the General Sessions action has been dismissed either by the General Sessions Court or by Defendants prior to the General Sessions Court dismissing the action.

84)    Since 2008, upon information and belief, according to the records of the General Sessions Court of the Thirtieth Judicial District of Tennessee at Memphis, Shelby County, National Bankers Trust, Powers & Stinson and/or The Transport Firm have filed more than 475 improper debt collection actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County on Sworn Account against entities whose addresses on the Civil Warrants known and actually provided by those Defendants were clearly outside Shelby County, Tennessee.

85)    According to information placed by Defendants on the General Sessions Civil Warrants, none of the Defendants in any of the approximately 475 General Sessions debt collection actions filed on sworn account in Shelby County, Tennessee by Nationals Bankers Trust, Powers & Stinson, Inc and/or The Transport Firm, Inc were located in Shelby County, Tennessee.

86)    Upon information and belief, not a single one of the 475 General Sessions debt collection actions resulted in a General Sessions trial victory for any Defendant.

87)     Since 2008, as a component of the debt collection scheme, Defendants have sought damages in excess of $1.5 million from these out-of-state defendants and putative Class Members in the improper debt collections General Sessions actions, in addition to seeking additional costs and attorney's fees.

88)     Since 2008, as part of the debt collection scheme, Defendants have taken default judgments in over 90 civil actions against out-of-state defendants and potential Class Members in the General Sessions Civil Actions filed in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, in an amount in excess of $662,000.00.

89)     Upon belief and subject to discovery, Plaintiff anticipates that an unknown number of other Class Members have been intimidated by Defendants' extortionate tactics, actions, threats of not only litigation, but escalated litigation costs, in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County, combined with concerns regarding the effects of a default judgment on their ability to operate and grow their businesses, and have been forced to make a business decision to settle these alleged claims under extortionate duress after being served as a Defendant in a Civil Action in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County.

90)     Since 2008, upon information and belief, despite filing numerous debt collection actions, at no time has National Bankers Trust possessed a Tennessee collection service license provided by the Tennessee Collection Service Board pursuant to the Tennessee Collection Services Act, codified at Tennessee Code Annotated § 62-20-105(a).

91)     Since its inception in 2011 through its application for a collection service license filed in March 2014, upon information and belief, at no time did either Powers & Stinson, a Tennessee Corporation, nor Powers & Stinson, a Mississippi corporation, possess a Tennessee collection service license provided by the Tennessee Collection Service Board pursuant to the Tennessee Collection Services Act, codified at Tennessee Code Annotated § 62-20-105(a). Prior to that 2014 application and at all times relevant to this class action, those Defendants were operating as unlicensed debt collectors in the State of Tennessee. Upon information and belief, Powers & Stinson, a Tennessee Corporation, has never applied for a Tennessee debt collectors license. (See Exhibit "Y", March 2014 application of Powers & Stinson, a Mississippi Corporation, for a Tennessee Collection Service License)

92)     Since its inception in 2011, upon information and belief, at no time has The Transport Firm possessed a Tennessee collection service license provided by the Tennessee Collection Service Board pursuant to the Tennessee Collection Services Act, codified at Tennessee Code Annotated § 62-20-105(a).

93)     Since 2008, upon information and belief, National Bankers Trust has filed over 235 improper debt collection actions on sworn account in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County against corporations located outside Tennessee.

94)     Defendants have had both clear notice and knowledge throughout the multi-year extortionate scheme of the lack of personal jurisdiction and the lack of proper venue for these debt collection actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County. Despite this knowledge, Defendants continued to

threaten to and/or file hundreds of knowingly improper debt collection actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County, as part of their overall debt collection scheme.

95)     Since 2008, the Class Plaintiffs and multiple Class Members have on multiple occasions prepared and/or filed Motions to Dismiss for lack of personal jurisdiction and/or for improper venue the General Sessions Civil Actions brought by Defendants.

96) Despite only limited discovery, Plaintiffs have already identified multiple instances wherein either Class Plaintiffs or putative class members have clearly put Defendants on notice of the issues of lack of personal jurisdiction and improper venue.

97)     Upon information and belief, every single one of those filed and/or prepared to file motions to dismiss for improper venue and/or lack of personal jurisdiction has led to the dismissal or voluntary termination of the debt collection action in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County.

98)     Upon information and belief, since 2008, no Defendant has ever successfully defended itself in the General Sessions Court of Shelby County, Tennessee against any Motion to Dismiss for lack of jurisdiction and/or improper venue argued in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County. Every single debt collection action that has been challenged has been dismissed voluntarily or by the Court.

99)     Defendants have had notice and knowledge throughout the multi-year scheme that every single debt collection action challenged in Shelby County General Sessions Court for improper venue and/or lack of personal jurisdiction has been dismissed, yet Defendants

24

continued to threaten and/or file these improper debt collections as part of their extortionate debt collection scheme.

100)   Upon information and belief, and as cited in this Second Amended Complaint, Defendants have utilized extortionate correspondence and tactics against multiple potential Class Members essentially identical to the August 9, 2011 correspondence from Powers & Stinson on behalf of National Bankers Trust to Cereal Byproducts (See ¶47 and Exhibit "J" to the Complaint)  and the November 17, 2011 correspondence from Powers & Stinson on behalf of National Bankers Trust to First Preference Products (See ¶66 and Exhibit "Q" to the Complaint) threatening to not only bring an improper debt collection action, but also threatening to intentionally engage in additional litigation and discovery to increase the potential Class Members' defense costs in an effort to intimidate and extort Class Members into settlement of an alleged debt under $25,000.

### *Representative,  similar actions against putative class members*

101) Through their own investigation and limited discovery, Plaintiffs have identified repeated examples of non-attorney debt collectors of the Defendants making the same extortionate threats in furtherance of this extortionate scheme over a multi-year period.

102)   In October 2012, Powers & Stinson sent the following e-mail correspondence to putative class member CDC Sales, Inc. of Boerne, Texas containing the same extortionate threat:

> Suit will be filed in Shelby County, Tennessee.  Our attorney, Russell E. Fox, works on contingency and it will only cost $97.50 to file a civil warrant.  The Tennessee licensed attorney that you will be required to hire to fight jurisdiction and/or just defend your case will be charging you by the hour and their retainer fee alone

will cost at least $3,000.00. If and when your local counsel files a motion to dismiss for jurisdiction, our attorney will file for a discovery.

I can assure you, the cost of litigation will exceed the amount owed to an unforeseeable amount, although we would greatly prefer to resolve this outside of court.

(See Exhibit "Z", email correspondence from Powers & Stinson to CDC Sales, Inc.).

103)   In October 2012, Powers & Stinson sent the following e-mail correspondence to putative class member McCoy Sales and Marketing of Southlake, Texas containing the same extortionate threat:

Suit will be filed in Shelby County, Tennessee. Our attorney, Russell E. Fox, works on contingency and it will only cost $97.50 to file the Civil Warrant. The Tennessee licensed attorney that you will be required to hire to fight jurisdiction and/or just defend your case will be charging you by the hour and their retainer fee alone will cost at least $3,000.00. If and when your local counsel files a motion to dismiss for jurisdiction, our attorney will file for a discovery.

I can assure you, the cost of litigation will exceed the amount owed to an unforeseeable amount, although we would greatly prefer to resolve this outside of court.

(See Exhibit "AA", August 14, 2012 correspondence from Powers & Stinson to McCoy Sales and Marketing).

104)   In November 2012, Powers & Stinson sent the following e-mail correspondence to putative class member Liberty Company of Alabama containing the same extortionate threat:

Suit will be filed in Shelby County, Tennessee. Our attorney, Russell E. Fox, works on contingency and it will only cost $97.50 to file the Civil Warrant. The Tennessee licensed attorney that you will be required to hire to fight jurisdiction and/or just defend your case will be charging you by the hour and their retainer fee alone will cost at least $3,000.00. If and when your local counsel files a motion to dismiss for jurisdiction, our attorney will file for a discovery.

26

I can assure you, the cost of litigation will exceed the amount owed to an unforeseeable amount, although we would greatly prefer to resolve this outside of court.

(See Exhibit "BB", November 8, 2012 correspondence from Powers & Stinson to Liberty Company of Alabama, LLC).

105) In November 2012, Powers & Stinson sent the following e-mail correspondence to putative class member Ditch Witch of Illinois containing the same extortionate threat:

Suit will be filed in Shelby County, Tennessee.  Our attorney, Russell E. Fox, works on contingency and it will only cost $97.50 to file the Civil Warrant. The Tennessee licensed attorney that you will be required to hire to fight jurisdiction and/or just defend your case will be charging you by the hour and their retainer fee alone will cost at least $3,000.00. If and when your local counsel files a motion to dismiss for jurisdiction, our attorney will file for a discovery.

I can assure you, the cost of litigation will exceed the amount owed to an unforeseeable amount, although we would greatly prefer to resolve this outside of court.

(See Exhibit "CC", November 20, 2012 correspondence from Powers & Stinson to Ditch Witch of Illinois).

106) In March 2013, Stinson sent the following e-mail correspondence to putative class member Okland of Salt Lake City, Utah containing the same extortionate threat:

Suit will be filed in Shelby County, Tennessee.  Our attorney, Russell E. Fox, works on contingency and it will only cost $97.50 to file the Civil Warrant. The Tennessee licensed attorney that you will be required to hire to fight jurisdiction and/or just defend your case will be charging you by the hour and their retainer fee alone will cost at least $3,000.00.  If and when your local counsel files a motion to dismiss for jurisdiction, our attorney will file for a discovery.

I can assure you, the cost of litigation will exceed the amount owed to an unforeseeable amount, although we would greatly prefer to resolve this outside of court.

(See Exhibit "DD", March 21, 2013 email correspondence from Powers & Stinson to Okland Construction Company).

107)   Based upon investigation and limited discovery, Plaintiffs have already identified the same, extortionate threat being made by non-attorney debt collectors at Powers & Stinson over a 19 month period between August 2011 and March 2013. Pending discovery, Plaintiffs expect that non-attorney debt collectors at Powers & Stinson made the identical extortionate threats repeatedly to numerous other putative class members that did or did not result in the filing of an improper debt collection action in the General Sessions Court of Shelby County, Tennessee.

### *National Bankers Trust improper debt collection actions*

108)   Defendant National Bankers Trust has been aware of the lack of personal jurisdiction and improper venue of its debt collection activities against out-of-state corporations engaged in out-of-state commerce since at least 2008.

109)   Between 2008 and 2010, National Bankers Trust was retained outside counsel to act as its agent in filing these improper debt collection actions in over 140 separate debt collection actions.

110)   On or about August 18, 2008, National Bankers Trust filed a debt collection action on Sworn Account in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County against LNC 3000, located in Euclid, Ohio. See Exhibit "EE", General Sessions Civil Warrant No. 1304248, National Bankers Trust Corp. v. LNC 3000 USA, Inc.

111)   On or about October 10, 2008, LNC 3000 USA filed a Motion to Dismiss and cited to both the lack of personal jurisdiction and improper venue of the action in the General

28

Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County. See Exhibit "FF". LNC 3000 "Motion to Dismiss for Lack of Subject Matter Jurisdiction"..

112)   On or about October 23, 2008, faced with the Motion to Dismiss, National Bankers Trust requested and an Order of Dismissal with Prejudice was entered in General Sessions Civil Action No. 1304248.

113)   This lawsuit, dismissed in 2008 in the face of a Motion to Dismiss, put National Bankers Trust provided National Bankers Trust both notice and knowledge that this debt collection scheme threatening and/or utilizing the General Sessions Court of Shelby County, Tennessee was improper; however, despite this notice and knowledge, National Bankers Trust continued to participate in the scheme for years.

114)   Two months later, on or about December 16, 2008, National Bankers Trust filed a debt collection action on Sworn Account in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County against CD Consortium of Albany, New York. Exhibit "GG", General Sessions Civil Action No. 1330997, <u>National Bankers Trust Corp. v. CD Consortium Corp.</u>

115)   On or about June 12, 2009, CD Consortium Corporation filed "Defendant CD Consortium Corporation's Objections to Jurisdiction and Motion to Dismiss" General Sessions Civil Action No. 1330997. See Exhibit "HH", "Defendant CD Consortium Corporation's Objections to Jurisdiction and Motion to Dismiss"

116)   On December 16, 2009, instead of trying to defend against the motion to dismiss the clearly improper debt collection action, National Bankers Trust voluntarily non-suited the

debt collection action at its own costs. See Exhibit "GG" to Second Amended Complaint.

117)   This lawsuit, dismissed in 2009 in the face of a Motion to Dismiss, put National Bankers Trust provided National Bankers Trust both notice and knowledge that this debt collection scheme threatening and/or utilizing the General Sessions Court of Shelby County, Tennessee was improper; however, despite this notice and knowledge, National Bankers Trust continued to participate in the scheme for years.

118)   On or about February 26, 2009, National Bankers Trust  filed a debt collection action on sworn account in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County against ATS Logistics of St. Cloud, Minnesota. Exhibit "II", General Sessions Civil Warrant No. 1344806, <u>National Bankers Trust v. ATS Logistics Services, Inc.</u>

119)   On or about July 28, 2009, "Defendant's Motion to Dismiss without Prejudice for Improper Venue, Lack of Personal Jurisdiction and Lack of Subject Matter Jurisdiction" was faxed to National Bankers Trust. See Exhibit "JJ", July 28, 2009 correspondence to counsel and attached "Defendant's Motion to Dismiss without Prejudice for Improper Venue, Lack of Personal Jurisdiction, and Lack of Subject Matter Jurisdiction"

120)   On the following day, July 29, 2009, instead of defending against a Motion to Dismiss a knowingly improper debt collection action, National Bankers Trust voluntarily non-suited General Sessions Civil Action No. 1344806 at National Bankers Trust's costs. See Exhibit "GG".

121)   This lawsuit, also dismissed in 2009 in the face of a Motion to Dismiss, put National Bankers Trust provided National Bankers Trust both notice and knowledge that this

debt collection scheme threatening and/or utilizing the General Sessions Court of Shelby County, Tennessee was improper; however, despite this notice and knowledge, National Bankers Trust continued to participate in the scheme for years.

122)   In 2010, National Bankers Trust began utilizing in-house counsel instead of outside counsel to handle the litigation portion of the debt collection scheme as an employee of National Bankers Trust.

123)   Upon information and belief, National Bankers Trust while using its own in-house counsel has acted as a debt collector on over 85 improper Civil Actions on Sworn Account filed in the General Sessions Civil Court of Shelby County between 2010 and 2012.

124)   Upon information and belief, Defendant E.A. Nichols, while in-house corporate counsel for National Bankers Trust, filed over 80 of those improper Civil Actions on sworn account on behalf of National Bankers Trust in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County against entities whose addresses on the Civil Warrants were clearly outside Shelby County, Tennessee.

**_The 2011 creation of Powers & Stinson, a Mississippi Corporation; Powers & Stinson, a Tennessee Corporation; Nichols Law Firm and/or The Law Office of E.A.Nichols and the continuing scheme_**

125) Upon information and belief, after filing over 85 debt collection actions through in-house counsel in 2010-2011, National Bankers Trust began in early 2011 to modify its extortionate debt collection scheme by usage of an outside debt collection agency and outside counsel instead of using in-house counsel.

31

126)   To effect this portion of the scheme, National Bankers Trust in-house corporate counsel E.A.  Nichols incorporated the Nichols Law Office on March 22, 2011.  (See Exhibit "B").

127)  To further effect this scheme, National Bankers Trust in-house corporate counsel, E.A. Nichols incorporated Defendant The Transport Firm, Inc. on March 29, 2011 in the State of Tennessee.  (See Exhibit "A", Charter of The Transport Firm, Inc.). The Transport Firm and Powers & Stinson, a Tennessee Corporation, are the same legal entity

128)   E.A. Nichols' and The Law Offices of E.A. Nichols had the same office address as National Bankers Trust (8245 Tournament Drive, Suite 120, Memphis, TN)  at the time he incorporated The Transport Firm, Inc while also still an employee of national Bankers Trust:

> Eldwin A.Nichols
> The Law Office of E.A. Nichols, P.C.
> 8245 Tournament Drive, Suite 120
> Memphis, Shelby County, Tennessee 38125

Id.

129)   Powers & Stinson, a Mississippi Corporation, was separately incorporated in Mississippi on June 16, 2011. The incorporator of Powers &Stinson, a Mississippi Corporation, was Donald McKnatt.

130) Defendant National Bankers Trust is the sole secured party of Defendant Powers & Stinson covering all assets of Powers &Stinson as indicated in Powers & Stinson's 2011 UCC-1 Financing Statement filed in the State of Mississippi. (See Exhibit "C")

131)   Eight days after Powers & Stinson, a Mississippi Corporation was incorporated, on or about June 24, 2011, National Bankers Trust and Powers & Stinson entered into a "Client

Service Agreement" See Exhibit "D", June 24, 2011 "Client Service Agreement" between National Bankers Trust and Powers & Stinson.

132)    The Client Service Agreement between Powers & Stinson (Agency") and National Bankers Trust ("Client") establishes Powers & Stinson as the agent for National Bankers Trust for the pursuit and collection of debts "as authorized" by National Bankers Trust. Id.

133) The Client Service Agreement between agent Powers & Stinson and client National Bankers Trust authorized that all debts would be collected by agent Powers & Stinson on behalf of National Bankers Trust. Id.

134) Defendant E.A. Nichols was the in-house Corporate Counsel for National Bankers Trust when Defendant National Bankers Trust entered into its Client Service Agreement with Defendant Powers & Stinson.

135)    In 2011, while simultaneously (1) an employee and in-house corporate counsel for Defendant National Bankers Trust (2) outside counsel for newly-formed Defendant Powers & Stinson with a Powers & Stinson e-mail account, and (3) managing attorney for newly formed Defendant The Nichols Law Firm, Defendant E.A. Nichols filed multiple improper Civil Actions on sworn account in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County against out-of-state corporations in support of Defendants' continuing debt collection scheme.

136)    As part of the continuing extortionate scheme, National Bankers Trust in-house corporate counsel and employee E.A. Nichols filed General Sessions Civil Action No. 1502311

in the General Sessions Court of Shelby County, Tennessee on behalf of Powers & Stinson, Inc. and National Bankers Trust against Defendant Timothy Farmer of Trustville, Alabama.

137)   As part of the continuing extortionate scheme,  National Bankers Trust in-house corporate counsel and employee, E.A. Nichols filed General Sessions Civil Action No. 1504617 in the General Sessions Court of Shelby County, Tennessee on behalf of Powers & Stinson, Inc. and National Bankers Trust against Southern Track and Pump, Inc. of Coco, Florida.  (See Exhibit "__").

138)   As part of the continuing extortionate scheme, National Bankers Trust in-house corporate counsel and employee, E.A.  Nichols filed General Sessions Civil Action No. 1509852 in the General Sessions Court of Shelby County, Tennessee on behalf of Powers & Stinson, Inc. and National Bankers Trust against American Fashion Clothing of Houston, Texas.  (See Exhibit "H").

139)   As part of the continuing extortionate scheme, National Bankers Trust in-house corporate counsel and employee, E.A.  Nichols filed General Sessions Civil Action No. 1504673 in the General Sessions Court of Shelby County, Tennessee on behalf of Powers & Stinson, Inc. and National Bankers Trust against Polyreps, Inc.

140)   As part of the continuing extortionate scheme, National Bankers Trust in-house corporate counsel and employee, E.A.  Nichols filed General Sessions Civil Action No. 1505717 in the General Sessions Court of Shelby County, Tennessee on behalf of Powers & Stinson, Inc. and National Bankers Trust against Ruiz Foods of Dinuba, California.

141)    While filing each of these debt collection actions on Sworn Account in the Shelby County General Sessions Civil Court against out-of-state corporations for Powers & Stinson and National Bankers Trust, the official address for Defendant E.A. Nichols with the General Sessions Court Clerk of Shelby County, Tennessee was that of Defendant National Bankers Trust (8245 Tournament Drive, Suite 120, Memphis, TN 38125).

142)    Further, the official address for Defendant E.A. Nichols with the General Sessions Civil Court Clerk of Shelby County, Tennessee for every improper debt collection action filed on behalf of Powers & Stinson and/or The Transport Firm throughout 2011 and 2012 pursuant to the extortionate debt collection scheme was that of Defendant National Bankers Trust (8245 Tournament Drive, Suite 120, Memphis, TN 38125)..

143)    Upon information and belief, E.A. Nichols left his employment with National Bankers Trust in August 2011.

144)    However, Defendant E.A. Nichols remained the registered agent for Defendant National Bankers Trust in the State of Tennessee until November 1, 2011

145)    After incorporating Powers & Stinson, Defendant E.A. Nichols maintained and utilized an e-mail address of Defendant debt collector Powers & Stinson (Charlie@freightattorneys.com ).

146)    After the formation of Powers and Stinson and/or The Transport Firm, National Bankers Trust continued to improperly pursue debt collection actions on sworn account in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County.

147)     By way of further example, on February 2, 2012, Powers & Stinson and National Bankers Trust filed a debt collection action against Peter Condrakes Company, Inc. of Everett, MA in the General Sessions Court of the State of Tennessee at Memphis, Shelby County, Civil Warrant No. 1541411 and had it served on Peter Condrakes Co. in the State of Massachusetts. (See Exhibit "KK" to Second Amended Complaint, General Sessions Civil Warrant No. 1541411, National Bankers Trust v. Peter Condrakes Company, Inc.)

148)     Prior to filing the cause of action, Peter Condrakes informed non-attorney employee "Nick Seaver" of Powers & Stinson that there was no jurisdiction in Tennessee for the action. Powers & Stinson debt collector and non-attorney "Nick Seaver" replied that the debt collection action would be filed and that Peter Condrakes Co. should consider settlement prior to " ...a costly and lengthy litigation." See Exhibit "LL", January 26, 2012 e-mail correspondence between Nick Seaver of Powers & Stinson and  Peter Condrakes Co.

149)     Two weeks later, as part of the "costly and lengthy litigation" scheme outlined by non-attorney " Nick Seaver", on February 8, 2012, Defendant E.A. Nichols and the Law Office of E.A. Nichols as counsel for  Powers & Stinson and National Bankers Trust filed  "Plaintiff's First Set of Interrogatories to Defendant" in the General Sessions action.  See Exhibit "MM" to Second Amended Complaint.

150)     On March 1, 2012, Peter Condrakes Company, Inc filed its "Motion to Dismiss" asking the court to dismiss the debt collection action for improper venue and for lack of personal jurisdiction. See Exhibit "NN", "Motion to Dismiss" in General Sessions No. 1541411.

151)   On March 22, 2012, faced with yet another Motion to Dismiss a clearly improper debt collection action, National Bankers Trust and Powers & Stinson dismissed General Sessions No. 1541411. See Exhibit "KK" to Second Amended Complaint.

152)   By way of further example, E.A. Nichols, as attorney for Powers & Stinson and National Bankers Trust, filed a debt collection action against Dynasty Farms, Inc. of Salinas, CA in the General Sessions Court of the State of Tennessee at Memphis, Shelby County, Civil Warrant No. 1547367. See Exhibit "OO", General Sessions Civil Warrant No. 1547367, Powers & Stinson v Dynasty Farms, Inc.

153)   Attached to that General Sessions Civil Warrant was an Affidavit of Sworn Account by the fictitious "Jim Anderson", identified as the Vice President of Operations of Powers & Stinson. The Affidavit indicated that Powers & Stinson had been retained by National Bankers Trust Corporation for debt collection activities. Id.

154)   In response to this Civil Action filed in Shelby County, Tennessee by Defendants, Dynasty Farms, Inc. retained licensed Tennessee counsel to represent it.

155)   On or about April 19, 2012, Dynasty Farms, Inc. filed "Defendant's Motion to Dismiss for Lack of Jurisdiction and Improper Venue". (See Exhibit "PP" to Second Amended Complaint) and "Memorandum of Law in Support of Defendant's Motion to Dismiss for Lack of Jurisdiction and Improper Venue" (See Exhibit "QQ" to Second Amended Complaint).

156)   On or about May 16, 2012, counsel for Dynasty Farms, Inc filed an Affidavit stating that a search had revealed that Powers & Stinson, Inc was not licensed by the Tennessee

Collection Services Board to perform collection services in the State of Tennessee. See "Exhibit "RR", Affidavit of Harry W. Lebair, IV.

157)  On May 17, 2012, General Sessions No. 1547367 was dismissed by the General Sessions Court for lack of jurisdiction, for improper venue, and for failure to comply with the requirements of the Tennessee Collection Services Act. See Exhibit "OO".

158)  This lawsuit, dismissed in 2012 on a Motion to Dismiss, again provided both National Bankers Trust and Powers & Stinson notice and knowledge that this debt collection scheme threatening and/or utilizing the General Sessions Court of Shelby County, Tennessee was improper; however, despite this notice and knowledge, National Bankers Trust continued to participate in the scheme for years.

159)  Since 2011, Powers & Stinson, Inc. and/or The Transport Firm has filed at least 21 Civil Actions on sworn account in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County on behalf of National Bankers Trust Corporation against entities whose addresses on the Civil Warrants were outside Shelby County, Tennessee.

160)  Of those 21 Civil Actions on sworn account filed by Powers & Stinson or The Transport Firms, Inc. in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County on behalf of National Bankers Trust Corporation, upon information and belief, 19 were filed by E.A. Nichols as managing attorney of either The Nichols Law Office of The Law Offices of E.A. Nichols, either while National Bankers Trust in-house corporate counsel or after leaving National Bankers Trust.

38

*Representative examples of Defendants' debt collection scheme against putative class members by Powers & Stinson, E.A. Nichols and his law firm*

161) After formation, Defendants Powers & Stinson, a Mississippi Corporation, and Powers & Stinson, a Tennessee Corporation, continued to work with outside counsel, initially and often in many instances with Defendant E.A. Nichols and his law firm, to further the debt collection scheme as formed while E.A. Nichols was In-house Counsel for National Bankers Trust.

162) Powers & Stinson, a Mississippi debt collection corporation, and Powers & Stinson, a Tennessee debt acquisition corporation, schemed with Defendant E.A. Nichols of Nichols Law Firm and/or The Law Offices of E.A. Nichols in numerous improper debt collection scheme actions which resulted in the filing of over 120 improper debt collections by Defendant E.A. Nichols in the General Sessions Court of Shelby County, Tennessee as part of the debt collection scheme.

163) Since incorporating in 2011 separately in Mississippi and Tennessee, upon information and belief, Powers & Stinson and/or The Transport Firm have filed approximately 240 civil actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County against entities whose addresses on the Civil Warrants were outside Shelby County, Tennessee.

164) On or about July 2, 2013, the Law Office of Russell E. Fox filed Shelby County General Sessions Civil Action No. 1631780, <u>Powers & Stinson v. Lift, Parts and Service, Inc.</u> of Overton, Texas, on behalf of Defendants Powers & Stinson. (See Exhibit "SS").

39

165)     On or about August 23, 2013, Lift, Parts and Service, Inc. filed its "Defendant's Motion to Dismiss Plaintiff's Civil Warrant Pursuant to Tenn. R. Civ. P. §12.02(2) for lack of personal jurisdiction. (See Exhibit "TT").

166)     Five days later, faced with yet another Motion to Dismiss a clearly improper debt collection action, Powers & Stinson again entered a voluntary nonsuit at its own Plaintiff's cost of General Sessions Civil Action No. 1631780.

167)     On or about September 13 2013, the Law Office of Russell E. Fox filed Shelby County General Sessions Civil Action No.  1645628, <u>Powers & Stinson v. McCoy Sales and Marketing</u> of South Lake, Texas, on behalf of Defendants Powers & Stinson.  (See Exhibit "UU").

168)     On or about October 31, 2013, McCoy Sales and Marketing filed "Defendant's Motion to Dismiss for Lack of Personal Jurisdiction". (See Exhibit "VV").

169)     Within one week, again facing a proper Motion to Dismiss, Powers & Stinson yet again entered a voluntary nonsuit at its own cost of General Sessions Civil Action No. 1645628.

170)     This lawsuit, dismissed after the filing of a Motion to Dismiss, again provided both Powers & Stinson defendants notice and knowledge that this debt collection scheme threatening and/or utilizing the General Sessions Court of Shelby County, Tennessee was improper; however, despite this notice and knowledge, Powers & Stinson continued to participate in the debt collection scheme.

171)   On May 20, 2013, Powers & Stinson, Inc., through the Law Office of Russell E. Fox filed Shelby County General Sessions Civil Warrant No. 1623696, <u>Powers & Stinson, Inc. v. Sierra Madre Seafood, LLC</u> of Houston, Texas, on behalf of Defendants Powers & Stinson.  (See Exhibit "WW").

172)   On or about June 3, 2013, Sierra Madre Seafood, LLC sent correspondence to the Law Office of Russell Fox indicating that Sierra Madre intended to file a Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to have a Tennessee Collections License against Defendants Powers & Stinson.   (See "Exhibit "XX", June 3, 2013 correspondence to Russell Fox).

173)   On August 8, 2013, faced with the threat of yet another proper Motion to Dismiss a clearly improper debt collection action, Powers & Stinson, Inc. entered a voluntary non-suit at its own cost of General Sessions Civil Action No. 1623696.

174)   This lawsuit, dismissed after the filing of a Motion to Dismiss, again provided both Powers & Stinson notice and knowledge that this debt collection scheme threatening and/or utilizing the General Sessions Court of Shelby County, Tennessee was improper; however, despite this notice and knowledge, Powers & Stinson continued to participate in the debt collection scheme.

175)   On or about August 30, 2013, Powers & Stinson, through the Law Office of Russell E. Fox, filed Shelby County General Sessions Civil Action No. 1643067, <u>Powers & Stinson v. Aurora Organic Dairy Corp.</u> of Denver, Colorado.  (See Exhibit "YY").

176)    On or about October 9, 2013, Aurora Organic Dairy Corp. filed its "Motion to Dismiss" and "Memorandum in Support of Motion to Dismiss" asserting a lack of personal jurisdiction, the doctrine of non-conveniens, and violation of the Tennessee Collections Service Act. A hearing was set for November 7, 2013. (See Exhibit "ZZ" and Exhibit "AAA").

177)    On October 24, 2013, two weeks prior to the hearing on yet another proper Motion to dismiss a clearly improper debt collection action, Powers & Stinson, Inc. entered a voluntary nonsuit at its own cost.

178)    This lawsuit, dismissed after the filing of a Motion to Dismiss, again provided both Powers & Stinson notice and knowledge that this debt collection scheme threatening and/or utilizing the General Sessions Court of Shelby County, Tennessee was improper; however, despite this notice and knowledge, Powers & Stinson continued to participate in the debt collection scheme.

179)    On January 3, 2013, Powers & Stinson, Inc. through the Law Office of Russell E. Fox filed Shelby County General Sessions Civil Warrant No. 1599512 against CDC Sales, Inc. of Boerne, Texas.

180)    Four days later, on January 7, 2013, CDC Sales sent correspondence to attorney Russell Fox questioning whether Powers & Stinson had standing to bring a claim against CDC Sales in Tennessee because Powers & Stinson did not possess a valid collection service license issued by the State of Tennessee and stating that "the General Sessions Court of Shelby County nor any Tennessee state court has jurisdiction over the claims your client has asserted against CDC Sales." (See Exhibit "BBB", January 7, 2013 correspondence to Russell Fox).

42

181)     The following day, debt collector and non-attorney "Jim Anderson" of Powers & Stinson responded to the January 7, 2013 correspondence by stating the following in relevant part:

> I am not sure if you are aware but Powers & Stinson, Inc.'s Tennessee corporation is a debt buying company not a collection agency. Powers & Stinson, Inc.'s Mississippi corporation is a collection agency. We do not need a license to purchase debt in Tennessee and we do not need a collection license in Mississippi.
>
> (See Exhibit "F", January 8, 2013 correspondence from Powers & Stinson to CDC Sales, Inc. counsel).

182)     On February 7, 2013, Powers & Stinson entered a voluntary nonsuit at Powers & Stinson's cost of General Sessions Civil Action No. 1599512.

183)     In 2012, Powers & Stinson began a debt collection action against Custom Pak of Immokalee, Florida.

184)     On or about September 13, 2012, Custom Pak indicated in correspondence to Powers & Stinson that Custom Pak would vigorously challenge jurisdiction of any debt collection action brought in Shelby County, Tennessee. (See Exhibit "CCC").

185)     On October 11, 2012, Powers & Stinson, Inc. through the Law Office of Russell Fox filed General Sessions Civil Action No. 1585528, See Exhibit "DDD", Powers & Stinson, Inc. v. Custom Pak, Inc.

186)     On November 20, 2012, Custom Pak had local Tennessee counsel file a Notice of Appearance in the Shelby County civil action.

187)    On January 31, 2013, Powers & Stinson, Inc. filed a voluntary nonsuit at Powers & Stinson's cost of General Sessions Civil Warrant No. 1585528.

188)    This lawsuit, dismissed after the threat of filing of a Motion to Dismiss, again provided both Powers & Stinson notice and knowledge that this debt collection scheme threatening and/or utilizing the General Sessions Court of Shelby County, Tennessee was improper; however, despite this notice and knowledge, Powers & Stinson continued to participate in the debt collection scheme.

189)    As part of the continuing scheme to intimidate, extort and defraud money from potential class members, after repeatedly having civil actions dismissed for improper venue and/or lack of personal jurisdiction, Defendants Powers & Stinson, E.A. Nichols and the Law Office of E.A. Nichols and/or Nichols Law Firm have repeatedly attached to the General Sessions Civil Warrants filed in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis a purported legal document signed by E.A. Nichols entitled "Jurisdiction" which contained the following blatantly false, fraudulent, incorrect and intentionally misleading statement of Tennessee law in a clear attempt to intimidate, mislead and extort money from class members:

> 4.    Since the debt in this matter has been properly assigned to Powers & Stinson, the debt is now due and owing in Tennessee, and therefore Jurisdiction and Venue are proper in this Court.

See Exhibit "EEE" to Second Amended Complaint, General Sessions Civil Warrant No. 1554119, Powers & Stinson v. Valley Metal Services, LLC.; *see also* Exhibit "FFF" to Second Amended Complaint, General Sessions Civil Warrant No. 1560415, Powers & Stinson, Inc v. Lane Robert Transport.

*Example of putative class member damaged by extorted debt collection settlement*

190)   Upon information and belief, many putative class members, in many cases small businesses located not merely hundreds, but often thousands of miles away from Shelby County, Tennessee, were extorted and intimidated into improperly coerced settlement by Defendants when faced with the prospect of defending against a General Sessions action in Shelby County, Tennessee.

191) By way of example, Defendants Powers & Stinson acquired and attempted to collect a debt from Summit USA of Longview, Washington in 2013.

192) Summit USA Inc. informed Powers & Stinson that it had previously paid the bill for which Powers & Stinson sought collection:

**From:** Leo Lin [mailto:lin.leo.ll@gmail.com]
**Sent:** Wednesday, August 28, 2013 11:20 AM
**To:** James Annestedt
**Subject:** RE: File 3954

I really did try James.  We already paid the bill from JD's Transport of $1,500.
Leo

See Exhibit "DDD", August 28, 2013 correspondence from Summit USA to Powers & Stinson.

193)   On August 28, 2013, debt collector and non-lawyer James Annestedt of Powers & Stinson sent an e-mail correspondence to Summit which stated in part:

I can assure you the cost of fighting this suit will go well above the $1,200.00 that is owed.

45

We really have nothing left to discuss unless you are prepared to pay this in full by tomorrow.

(See Exhibit "HHH", August 28, 2013 correspondence from James Annestedt of Powers & Stinson to Summit USA Inc.

194) On August 30, 2013, Powers & Stinson brought a debt collection action on sworn account in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County against Summit USA Inc. of Longview, Washington seeking only $1,200 (See Exhibit "III" General Sessions Civil Warrant No.1643069, Powers & Stinson v. Summit USA Inc.).

195)    In the face of defending an incredibly inconvenient and expensive lawsuit seeking only $1200 filed in a jurisdiction and venue over 2,350 miles from Longview, Washington, and to avoid being damaged by a an improperly taken default judgment, Summit USA Inc., despite having a stated defense to the lawsuit, upon information and belief in the face of the extortionate scheme, was forced to reach a settlement of the cause of action.

196)    Upon belief and subject to discovery, Plaintiffs further anticipate that an unknown number of other Class Members have been intimidated by Defendants' extortionate tactics, actions, threats of not only improper and fraudulent litigation, but escalated litigation costs, in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County, combined with concerns regarding the effects of a default judgment, and have been forced to make a business decision to settle these alleged claims under duress prior to being served as a Defendant in a Civil Action in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County.

46

*Additional extortionate tactics of Defendants Powers & Stinson, a Mississippi Corporation,*
*and Powers & Stinson, a Tennessee Corporation*

197)   As part of the repeated extortionate and fraudulent scheme, in addition to threatening and/or filing improper debt collection Actions brought in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County, and threatening to escalate the litigation costs and expenses associated with those improper debt collection actions, Defendants Powers & Stinson have also attempted to intimidate and extort settlements out of prospective class members by threatening to report and/or reported improperly taken default judgment taken in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County to various credit agencies and bureaus to damage class members ability to conduct their businesses and engage in interstate commerce.

198)   By way of example, debt collector and non-lawyer James Annestedt of Powers & Stinson sent e-mail correspondence to the Tumac Company of Portland, Oregon on July 24, 2013, which stated in part the following threat regarding the clearly improper debt collection action in Shelby County, Tennessee:

> We will seek to get a judgment on the suit amount and we will seek to attach interests, late fees, collection fees and possibly attorney fees.
>
> Once the judgment is awarded we will report it to Dun & Bradstreet, Equifax, Experian and TransUnion. In addition, your company will be reported to Compunet Credit, Ansonia Credit, Internet Truckstop, DAT/Transcorc and Core Logic for non-payment to carriers. We will then file a lien on any and all assets related to your company, notify ifs banking and lending partners and file a writ of garnishment on all withstanding accounts.

See Exhibit "JJJ" to Second Amended Complaint, July 24, 2013 e-mail correspondence from Powers & Stinson to The Tumac Company.

199)   By way of further example, debt collector and non-lawyer James Annestedt of Powers & Stinson also sent e-mail correspondence to KB&R Trading Corporation of Tinton Falls, NJ on August 6, 2013, which contained the exact same threat regarding the clearly improper debt collection action in Shelby County, Tennessee:

> We will seek to get a judgment on the suit amount and we will seek to attach interests, late fees, collection fees and possibly attorney fees.
>
> Once the judgment is awarded we will report it to Dun & Bradstreet, Equifax, Experian and TransUnion. In addition, your company will be reported to Compunet Credit, Ansonia Credit, Internet Truckstop, DAT/Transcorc and Core Logic for non-payment to carriers. We will then file a lien on any and all assets related to your company, notify ifs banking and lending partners and file a writ of garnishment on all withstanding accounts.

See Exhibit "KKK" to Second Amended Complaint, September 5, 2013 e-mail correspondence from Powers & Stinson to KB&R Trading Corporation.

200)   By way of further example, debt collector and non-lawyer James Annestedt of Powers & Stinson sent e-mail correspondence to putative class member LB Pipe and Coupling Products of Magnolia, Texas on September 5, 2013, which contained the exact same threat regarding the clearly improper debt collection action in Shelby County, Tennessee:

> We will seek to get a judgment on the suit amount and we will seek to attach interests, late fees, collection fees and possibly attorney fees.
>
> Once the judgment is awarded we will report it to Dun & Bradstreet, Equifax, Experian and TransUnion. In addition, your company will be reported to Compunet Credit, Ansonia Credit, Internet Truckstop, DAT/Transcorc and Core Logic for non-payment to carriers. We will then file a lien on any and all assets related to your company, notify ifs banking and lending partners and file a writ of garnishment on all withstanding accounts.

See Exhibit "LLL" to Second Amended Complaint, September 5, 2013 e-mail correspondence from Powers & Stinson to LB Pipe and Coupling Products.

201)   By way of further example, debt collector and non-lawyer James Annestedt of

Powers & Stinson also sent e-mail correspondence to The Gladon Company, Inc. of Oak

Creek, Wisconsin on September 5, 2013, which contained the exact same threat regarding the

clearly improper debt collection action in Shelby County, Tennessee:

> We will seek to get a judgment on the suit amount and we will seek to attach
> interests, late fees, collection fees and possibly attorney fees.
>
> Once the judgment is awarded we will report it to Dun & Bradstreet, Equifax,
> Experian and TransUnion. In addition, your company will be reported to
> Compunet Credit, Ansonia Credit, Internet Truckstop, DAT/Transcorc and Core
> Logic for non-payment to carriers. We will then file a lien on any and all assets
> related to your company, notify ifs banking and lending partners and file a writ of
> garnishment on all withstanding accounts.

See Exhibit "MMM" to Second Amended Complaint, September 5, 2013 e-mail correspondence
from Powers & Stinson to The Gladon Company.

202)   In May 2013, Powers & Stinson sent the following e-mail correspondence to

putative class member McCoy Sales Corp. of Southlake, Texas containing the same extortionate

threat regarding the clearly improper debt collection action in Shelby County, Tennessee:

> We have been assigned the referenced debt and attached is a copy
> of the suit that was filed against your company in Shelby County,
> Tennessee by Powers & Stinson, Inc. …
>
> We will seek to get a judgment on the suit amount and we will
> seek to attach interest, late fees, collection fees and possibly
> attorneys fees.
>
> Once the judgment is awarded we will report it to Duns and
> Bradstreet, Equifax, Experian and TransUnion. In addition, your
> company will be reported to Compunet Credit and Ansonia Credit,
> Internet Truck Stop, DST/Transcore and Core Logic for non-
> payment to carriers. We will then file a lien on any and all assets

49

related to your company, notify banking and lending partners and file a writ of garnishment on all outstanding accounts.

(See Exhibit "NNN", May 21, 2013 email correspondence from Powers & Stinson to McCoy Sales Corp.).

203)    The named Plaintiffs bring this action as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves individually and the Class Members who were either threatened with Civil Actions and/or were named as Defendant in Civil Actions improperly brought by Defendants in the General Sessions Civil Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County during the relevant time period.

## NUMEROSITY

204)    The requirements of Rule 23(a)(1) are satisfied in that there are too many Class Members such that joinder of all of them would not be practicable. Upon information and belief, Defendants have collectively filed over 475 Civil Actions since 2008 in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County against Defendants not located in Shelby County, Tennessee, for which there was no personal jurisdictional or venue basis. Defendants have also filed these actions without possessing the required Tennessee collection service license required by the Tennessee Collection Service Board as codified by the Tennessee Collection Services Act, Tennessee Code Annotated § 62-20-105(a).

205)    Further, as addressed above, National Bankers Trust has filed over 85 improper debt collection actions in the General Sessions Court through in-house counsel since 2008, Powers & Stinson has filed over 235 improper debt collection actions in the General Sessions Court since incorporating separately in Mississippi and Tennessee in 2011. Defendant E.A.

50

Nichols has filed over 130 improper debt collection actions in the General Sessions Court of Shelby County, Tennessee.

206)   In addition, it is expected that additional discovery will identify numerous other putative Class Members who were forced to respond to Plaintiff's extortion and threats of inconvenient, disruptive and expensive litigation, combined with the real fear of what impact a default judgment would have on their businesses, by settling with Defendants prior to Defendants filing of the threatened improper Civil Action in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County.   Thus, beyond the more than 475 known lawsuits filed in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County against potential Class Members who were not located in Shelby County, Tennessee, the actual number of entities injured by Defendants' unlawful actions is likely greater than the number of known lawsuits that have been filed in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County. Combining the known debt collection actions filed by Plaintiffs in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County, along with the anticipated additional numerous Class Members who settled in the face of Defendants' extortion and threatened improper legal action, this Class, as defined above, meets the numerosity requirement of FRCP 23(a).

## COMMONALITY

207)   The claims of the Class Members raise numerous common issues of fact and/or law, thereby satisfying the requirement of Rule 23(a)(2).   These common legal and factual

questions, which may be determined without the necessity of resolving individualized factual questions concerning any Class member, include, but are not limited to, the following questions:

(1)     Whether Defendants committed extortion both verbally and in written communications by threatening and/or filing civil actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County in an effort to coerce members of the putative Class into entering settlement agreements under the threat of and/or filing of improper Civil Actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County.

(2)     Whether Defendants committed the RICO predicate act of mail fraud pursuant to 18 U.S.C.§1341 by intentionally scheming to defraud Class Members out of money through false and/or fraudulent pretenses by threatening and/or filing lawsuits in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County which had no legal basis to be brought in Shelby County, Tennessee.

(3)     Whether Defendants committed the RICO predicate act of  wire fraud pursuant to U.S.C. §1343 by knowingly and willingly scheming to defraud Class Members out of money through email communications threatening and/or bringing litigation in Shelby County, Tennessee without legal basis.

(4)     Whether Defendants engaged in actions for a common purpose of conducting a scheme to obtain money from Class Members with the threat of and/or actually filing improper civil actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County which affected interstate commerce.

(5)     Whether Defendants committed the predicate act of violating the Hobbs Act, 18 U.S.C. § 1951 by knowingly and willfully committed extortion by threatening and/or filing civil actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County.

(6)     Whether Defendants utilized false, deceptive and/or misleading representations by representing that they were entitled to and/or actually brought civil actions in Shelby County, Tennessee against Class Members in an attempt to collect an alleged debt in violation of 15 U.S.C. §1692(e).

(7)     Whether Defendants committed extortion by coercing Class Members into settling alleged debts by the threatened and/or filing of

Civil Actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County.

(8)     Whether Defendants' extortionate actions affected interstate commerce.

(9)     Whether Defendants engaged in collections recovery in the State of Tennessee without possessing the required Tennessee collection service license provided by the Tennessee Collection Service Board as required by the Tennessee Collection Services Act, codified at Tennessee Code Annotated § 62-20-105(a).

(10)     Whether Defendants engaged in Abuse of Process in filing and prosecuting improper civil actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County.

(11)     Whether Defendants engaged in malicious prosecution by initiating with malice civil actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County.

(12)     Whether and what form of relief should be afforded to Plaintiffs and the Class Members.

## TYPICALITY

208)     The claim of the named Plaintiffs is typical of the putative Class Members because they have a common source and rest upon the same legal and remedial theories, thereby satisfying the requirements of Rule 23(a)(3). The named Plaintiffs' claims are typical of the claims in the Class because Plaintiffs and all potential Class Members were injured or damaged by the same illegal and wrongful practices in which Defendants were engaged, namely the threatening and/or filing of improper Civil Actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County for the recovery of alleged collection debts despite there being no jurisdictional or venue basis to bring the action in the General Sessions Court of Tennessee, all of which was known to Defendants.

209) Plaintiffs are out-of-state corporations involved in transactions involving multiple parties, none of which are located in Tennessee. Plaintiffs were served as Defendants in the General Sessions action at its out of state address. Plaintiffs were threatened by Defendants with not only litigation in an improper and inconvenient forum, but Plaintiffs were further threatened with increased litigation costs if any jurisdictional challenges were made. Plaintiffs were forced by this extortionate threat to expend time, money and resources, which could have instead been expenses in its interstate commerce activities, to respond to Defendants improper actions. Further, Plaintiffs were subjected to these actions despite Defendants not being licensed to engage in collections practices in Tennessee. Thus, the claims asserted by Plaintiffs in this action arise from the same course of conduct by Defendants, and the relief sought is common.

## ADEQUACY OF REPRESENTATION

210) The requirements of Rule 23(a)(4) are satisfied in that the named Plaintiff has a sufficient stake in the litigation to vigorously prosecute its claims on behalf of the Class Members and the named Plaintiff's interests are aligned with those of the proposed Class. There are no defenses of a unique nature that may be asserted against Plaintiff individually, as is distinguished from the other members of the Class, and the relief sought that is common to the Class. Plaintiff does not have any interest that is in conflict with or is antagonistic to the interests of the members of the Class, and has no conflict with any other member of the Class. Further, Plaintiff has retained competent counsel experienced in civil litigation to represent it and the Class Members in this litigation.

## CAUSES OF ACTION

### FIRST COUNT FOR RELIEF
### EXTORTION

54

211)   Plaintiffs, on behalf of themselves individually and all others similarly situated, incorporate by reference all allegations contained in this Second Amended Complaint.

212)   Defendants extorted and/or attempted to extort money from Plaintiffs and the proposed Class Members

213)   Defendants, verbally and by written communication, improperly attempted to coerce Plaintiff and proposed Class Members into settling alleged collection debts under the threat of and/or filing of an improper Civil Action in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County that had no legal basis to be filed in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County, nor were Defendants licensed to bring those collection actions in Tennessee.

214)   Defendants made the threats with the intent that Plaintiffs and proposed Class Members would rely on them.

215)   As a direct and proximate result of Defendants' threats of and filing of Civil Actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County, Plaintiffs and proposed Class Members suffered injuries, damages or losses in an amount to be determined at trial.

216)   Plaintiffs and proposed Class Members are entitled to punitive damages because the Defendants' conduct was malicious, intentional, fraudulent and/or reckless.

## SECOND COUNT FOR RELIEF
## CONSPIRACY TO COMMIT EXTORTION

217)   Plaintiffs, on behalf of themselves individually and all others similarly situated, incorporate by reference all allegations contained in this Second Amended Complaint.

218)   Defendants each knowingly and willfully conspired and agreed to engage in the scheme to extort described in this Second Amended Complaint.

219)   Defendants committed and caused to be committed one or more overt and unlawful acts in furtherance of the conspiracy, including but not limited to the acts described in this Second Amended Complaint.

220)   As a direct and proximate result of Defendants' conspiracy to commit extortion, Plaintiffs and members of the proposed Class suffered injuries, damages, or losses in an amount to be determined at trial.

221)   Plaintiffs and members of the proposed Class are entitled to punitive damages because Defendants' conduct was malicious, intentional, fraudulent and/or reckless.

## THIRD COUNT FOR RELIEF
## VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C. § 1962(c)

222)   Plaintiffs, on behalf of themselves individually and all others similarly situated, incorporate by reference all allegations contained in this Second Amended Complaint.

223)   Plaintiffs and each proposed Class member is a "person" under 18 U.S.C. §§ 1961(3) and 1964(c).

224)   Each Defendant is a "person" under 18 U.S.C. §§ 1961(3) and 1962(c).

225)   Defendants are a group of persons associated in fact for the common purposes of conducting the extortionate scheme described in this Second Amended Complaint: namely, extorting Plaintiffs and the putative Class Members to settle alleged collection debts under the threat of and/or filing of improper debt collection actions with the threat of excessive litigation expenses and costs, improper default judgments and damage to credit scores and ratings, in the General Sessions Court of Shelby County, Tennessee, even though Defendants had clear knowledge and notice that these debt collection actions were improper in Shelby County General Sessions Court which lacked personal jurisdiction and was an improper venue for the actions.

226)   Defendants National Bankers Trust, Powers & Stinson, a Tennessee corporation, Powers & Stinson, a Mississippi corporation,, E.A. Nichols, individually, and The Nichols Law Firm and/or The Law Offices of E.A. Nichols all were engaged in the fraudulent scheme at times relevant to the action.

227) National Bankers Trust with assistance of outside counsel began the scheme by filing more than 140 improper debt collection actions against out-of-state corporations between 2008 and 2010.

228)   National Bankers Trust and attorney E.A. Nichols furthered and continued the enterprise in the filing of over 85 debt collections actions on behalf of National Bankers Trust and unknown other threatened improper debt collection actions.

229) In 2011, to further and expand the debt collection scheme, National Bankers Trust through National Bankers Trust employee and in-house counsel E.A. Nichols incorporated Powers & Stinson and/or The Transport Firm in Tennessee.

230) In 2011, to further and expand the debt collection scheme, National Bankers Trust through National Bankers Trust employee and in-house counsel E.A. Nichols created and incorporated Nichols Law Firm and/or The Law Offices of E.A. Nichols.

231) National Bankers Trust and E.A. Nichols and The Nichols Law Firm and/or The Law Offices of E.A. Nichols worked out of and maintained the same office at the time of the Nichols Law Firm creation and incorporation in 2011.

232) E. A. Nichols' official address with the General Sessions Court Clerk of Shelby County, Tennessee while filing improper debt collection actions for Powers & Stinson and National Bankers was the office of National Bankers Trust.

233) E. A. Nichols' official address with the General Sessions Court Clerk of Shelby County, Tennessee while separately filing improper debt collection actions solely on behalf of Powers & Stinson was still the office of National Bankers Trust.

234) Later, the Nichols Law Firm and/or The Law Office of E.A. Nichols moved and jointly used the same "office" (a UPS mailbox) as Powers & Stinson, a Tennessee Corporation, and/or the Transport Firm.

235) E.A. Nichols of Nichols Law Firm and/or the Law Offices of E.A. Nichols utilized a Powers & Stinson e-mail address (Charlie@freightattorneys.com) in his debt collection actions.

58

236) As incorporated by National Bankers Trust in-house counsel E.A. Nichols in 2011, Powers and Stinson, a Tennessee Corporation, was a separate corporation than Powers & Stinson, a Mississippi Corporation.

237) Powers & Stinson, a Mississippi Corporation, was separately incorporated on June 16, 2011; 8 days later, Powers & Stinson and National Bankers Trust entered into a Client Services Agreement with E.A. Nichols as in-house corporate counsel for National Bankers Trust for debt collection actions.

238)   National Bankers Trust is the sole secured party on Powers & Stinson's 2011 UCC in Mississippi for all assets of Powers & Stinson.

239) As described in this Second Amended Complaint, in correspondence to putative class members as detailed in this Second Amended Complaint, debt collectors of Powers & Stinson, a Mississippi Corporation (the debt collection agency), repeatedly admitted the separate nature and functions of the two Powers & Stinson entities separately in Mississippi and Tennessee.

240) Powers & Stinson, a Tennessee Corporation, acquired debts from National Bankers Trust pursuant to the Client Services Agreement.

241) Powers & Stinson, a Mississippi Corporation, then furthered the debt collection scheme and engaged separately in the "debt collection" portion of the scheme, including making the extortionate threats recited above to Class Plaintiffs and to a undetermined number of additional class members as addressed in this Second Amended Complaint.

242)   As part of the extortionate debt collection scheme, E.A. Nichols prepared, threatened to file, and/or filed the improper debt collection actions at the direction of National Bankers Trust and Powers & Stinson to extort debt collection settlements with the threat of litigation, purposely increased litigation costs and expenses, and threats of default judgments being reported to credit bureaus and agencies.

243) The clear intent of the consolidated, extortionate debt collection scheme was financial gain and profit through extorted debt collection settlement outside of court; Defendants utilized the knowingly improper lawsuits as a weapon and tool of extortion and intimidation. The default judgments threatened and/or obtained by Defendants in Tennessee against out-of-state corporations were likely unenforceable in other states, but separately still threatened to cause and/or caused actual injury and damages to putative class members by being reported to credit bureaus and credit agencies, thereby damaging credit ratings and the ability to engage in interstate commerce.

244)   National Bankers Trust, Powers & Stinson, a Tennessee Corporation, and Powers & Stinson, a Mississippi Corporation, all profited jointly and maintained a joint financial interest in the debt collection scheme being successful pursuant to the recovery terms contained in the Client Services Agreement (See exh ""). Defendant National Bankers Trust had further financial interest in Powers & Stinson as the only secured party encompassing all assets of Powers & Stinson.

245)   Defendants E.A. Nichols and the Nichols Law Firm and/or The Law Offices of E.A. Nichols also profited and maintained a unified, joint financial interest in the debt collection

scheme being successful because E.A. Nichols worked "on a contingency basis" for Powers & Stinson and National Bankers Trust.

246)    E.A. Nichols, individually, as well as managing attorney of The Nichols Law Firm and/or The Law Offices of E.A. Nichols, initially engaged in the RICO scheme by incorporating Powers & Stinson and the Nichols Law Firm while In-house counsel for National Bankers Trust.

247)    E.A. Nichols and his law firms continued to participate in the scheme by following the direction of Powers & Stinson and/or National Bankers Trust and repeatedly filing fraudulent and extortionate debt collection actions in support of National Bankers Trust and/or Powers & Stinson's debt collection scheme.

248)    The extortionate threats and tactics  by non-attorney debt collectors at Powers & Stinson continued even after the debt collection action was filed by counsel as non-attorney debt collectors at Powers & Stinson (ex. "Jim Anderson" ) demanded that all contact be with them in their debt collector capacity and stated clearly that there would be no contact with counsel.

249)    Only if the out-of-state corporations did not relent to the extortionate tactics of the non-attorney debt collectors would the General Sessions debt collection action proceed to a default judgment in approximately 90 instances. Those default judgments harmed the credit scores and/or credit ratings of these putative class members and affected and likely still affect their ability to engage in interstate commerce.

250)    Defendants Powers & Stinson, a Tennessee Corporation, and Powers & Stinson, a Mississippi Corporation, maintained a debt collection relationship with Defendants E.A. Nichols

and the Law Office of E.A. Nichols until May 30, 2012, continuing the same debt collection extortionate scheme concocted when the entities were formed out of National Bankers Trust in 2011.

252)    Separate entities Powers & Stinson, a Tennessee Corporation, and Powers & Stinson, a Mississippi Corporation, continued for the following years their extortionate scheme of debt acquisition (Tennessee) and debt collection (Mississippi) with use of outside or in-house counsel threatening to file and/or filing improper debt collection suits in the Shelby County General Sessions Court even after National Bankers Trust ceased being a named defendant in such actions.

253)    Defendant Powers & Stinson, a Tennessee Corporation, has continued to obtain alleged debts allegedly owed by out-of-state corporations for out-of-state transactions from various clients other than National Bankers Trust.

254) Defendant Powers & Stinson, a Mississippi Corporation, has continued its extortionate debt collection tactics on behalf of clients other than National Bankers Trust with the use of outside counsel (e.g. E.A. Nichols, Russell Fox) or in-house counsel (e.g. Russell Fox) during latter portions of the continuing extortionate scheme.

255) In May 2012, Defendants Powers & Stinson, a Tennessee Corporation, and Powers & Stinson, a Mississippi Corporation, continued the extortionate debt acquisition and collection scheme employed against Plaintiffs and multiple class members switching from E.A. Nichols and his law firm to The Law Office of Russell Fox and attorney Russell Fox, or later Russell Fox as in-house counsel, for the litigation threat portion of the extortionate scheme going forward.

(See Exhibit "OOO", May 30, 2012 email correspondence from Powers & Stinson Vice President "Jim Anderson" to attorney Ronald Krelstein).

256) Since May 2012, Defendants Powers & Stinson, a Tennessee Corporation, and Powers & Stinson, a Mississippi Corporation, continued the improper debt acquisition and collection scheme using the Law Office of Russell Fox or Russell Fox as in-house counsel by filing over 165 similarly improper debt collection actions in the General Sessions Court of Shelby County, Tennessee.

257)   At all times while involved in the Class period since 2008, Defendants were each and all employed by and/or associated with the Enterprise as detailed in this Second Amended Complaint.

258)   Defendants each conducted and/or participated in the conduct of the Enterprise's affairs at various times during the Class Period, as described in this Second Amended Complaint. Complaint, through a pattern of racketeering activity, as that phrase is defined in 18 U.S.C. §§ 1961(1) and (5).

259)   The pattern of racketeering activity consisted of the predicate acts of extortion as outlined in this Second Amended Complaint, fraud or intentional misrepresentation as addressed in this Second Amended Complaint, mail fraud in violation of §1341, wire fraud in violation of §1343, and violation of the Hobbs Act§1951. Specifically, Defendants engaged in a scheme to intimidate, extort and defraud Plaintiffs and the proposed Class Members in order to obtain money from Plaintiffs and the proposed Class Members through false and fraudulent

pretenses, representations, extortionate threats, promises, and threatened costly legal debt collection actions.

### *Predicate act of mail fraud*

260)   Defendants committed mail fraud in violation of 18 U.S.C. §1341. Specifically, Defendants engaged in a scheme to defraud and obtain money from Plaintiffs and the proposed Class Members through false or fraudulent pretenses, representations, promises, extortion and threats of litigation. It was reasonably foreseeable to Defendants that the mails would be used in furtherance of the scheme, and the mails were in fact used to further execute the scheme to defraud.

261)   For the purpose of furthering and executing the scheme to defraud, Defendants regularly caused matters and things to be placed in a post office or authorized depository, or deposited or caused to be deposited matters of things to be sent or delivered by a private or commercial interstate carrier ("the mailings"). The details of the mailings are set forth above.

262)   Defendants used the mail for the above-stated purposes to further and execute the scheme to defraud Plaintiffs and the proposed Class Members.

263)   Defendants had definitive knowledge that they were threatening and/or filing lawsuits in the General Sessions Civil Courts of Shelby County, Tennessee that were improper and without legal basis in support of their debt collection scheme.   Since forming that knowledge, every time that non-lawyer debt collectors  at Defendant Powers & Stinson mailed d a settlement demand letter or any other correspondence related to the alleged debt; every time non-lawyer debt collectors threatened a debt collection action in the General Sessions Court for

the Thirtieth Judicial District of Tennessee at Memphis, Shelby County to a member of the proposed Class; every time a debt collector and non-lawyer from Defendant Powers & Stinson mailed a threat to report a improperly obtained default judgment taken in the General Sessions Court of Shelby County, Tennessee to credit agencies and/or bureaus; every time that E.A. Nichols, individually and the Nichols Law Office and/or The Law Offices of E.A. Nichols mailed discovery to Plaintiffs or any proposed Class member; filed a General Sessions Warrant or other court pleading in the General Sessions Court of Shelby County, Tennessee; filed a blatantly fraudulent "Jurisdiction" pleading as an attachment to the General Sessions Civil Warrant;, Defendants furthered the false impression that their demands were legitimate and lawful.

264)    At the time the mailings were made, Plaintiffs and the proposed Class Members to whom they were mailed did not know that these representations contained therein were false and fraudulent.

265)    These false representations were material to Plaintiffs and the proposed Class Members' decision to either settle prior to the filing of the threatened litigation in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County, retain legal counsel in Tennessee, or be subject to a default judgment taken in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County by Defendants.

266)    Defendants mailed the false representations knowing them to be false and/or improper and were aware that Plaintiffs and the proposed Class Members did not know with certainty whether the representations or threats of and/or filing of Civil Actions in the General

65

Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County were improper or proper.

267)    Defendants mailed the false, extortionate representations with the intent that Plaintiff and proposed Class Members would rely on the false, extortionate representations. Plaintiff and proposed Class Members did rely on the false, extortionate representations to their detriment. That reliance was reasonably justified, and Plaintiffs and the proposed Class Members had the right to rely on the false, extortionate representations contained in the mailings.

268)    Each act of mail fraud detailed in this Second Amended Complaint constitutes a predicate act of fraud under RICO because each mailing furthered and executed the scheme to defraud Plaintiffs and the proposed Class Members.

269)    Defendants each participated in the scheme to defraud knowingly, willfully, and with the specific intent to defraud Plaintiff and the proposed Class Members into settling alleged debts under the threat of and/or filing of improper civil actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County, despite the fact that those actions were improper and without legal basis in Shelby County, Tennessee.

270)    Defendants schemed to defraud Plaintiffs and the proposed Class Members extended over a multiyear period and continues to the present.

### *Predicate act of wire fraud*

271)    Defendants committed wire fraud in violation of 18 U.S.C. § 1343. Specifically, Defendants engaged in an intentional scheme to defraud Plaintiffs and the proposed Class

Members and to obtain money from Plaintiffs and the proposed Class Members through false or fraudulent pretenses, representations, promises, extortionate threats of and/or filing costly Civil Actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County. It was reasonably foreseeable to Defendants that the wires would be used in furtherance of the scheme, and the wires were in fact used to further and execute the scheme to defraud.

272)   For the purpose of furthering and executing the scheme to extort and defraud, Defendants regularly transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds (the "wirings"). The details of the wirings are set forth above.

273)   Defendants used the wires for the above stated purposes to further and execute the scheme to defraud Plaintiff and the proposed Class Members.

274)   Defendants had definitive knowledge that there was no legal basis to bring these actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County.  Defendants further had definitive knowledge that they did not have a valid Tennessee collection service license issued by the Tennessee Collection Service Board.  Since forming that knowledge, every time that non-lawyer debt collectors Powers & Stinson wired a settlement demand letter or other correspondence related to the alleged debt to a member of the proposed Class; every time non-lawyer debt collectors threatened intentionally escalated litigation costs and expenses; every time that non-lawyer debt collectors threatened to report knowingly improper default judgments to credit bureaus and credit agencies; every time E.A. Nichols, individually and The Nichols Law Firm and/or the Law Offices of E.A. Nichols e-

mailed copies of General Sessions Warrants or other court documents; pursued discovery or electronically filed any motion with the court, Defendants furthered the false impression that their demands were legitimate and proper.

275)   At the time the wirings were made, Plaintiffs and the proposed Class Members to whom they were wired did not know that these representations contained therein were false and fraudulent.

276)   These false representations were material to Plaintiffs and the proposed Class Members' decision to settle the alleged debts, expend money and resources retaining Tennessee Counsel to defend against the improper civil actions, or be subject to entry of a default judgment in a court of law.

277)   Defendants made the false representations and threatened to file and/or filed civil actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County knowing that there was no legal basis and/or being aware that Plaintiff and the proposed Class Members did not know whether the representations were true or false.

278)   Defendants made the false representations with the intent that Plaintiffs and the proposed Class would rely on the false representations and settle the alleged debts.

279)   Plaintiffs and the proposed Class Members did rely on the false representations to their detriment. That reliance was reasonable and justified, and Plaintiff and the proposed Class Members had a right to rely on the false representations contained in the wirings in making their responses.

280)    Each act of wire fraud detailed in this Second Amended Complaint each constitutes a predicate act of fraud under RICO because each wiring furthered and executed the scheme to defraud Plaintiff and the proposed Class Members.

281)    Defendants each participated in the scheme to defraud knowingly, willfully, and with a specific intent to defraud and intimidate Plaintiffs and the proposed Class Members into entering settlement agreements under the threat of fraudulent claims for statutory damages and the threat to take legal action when none was intended to be taken.

282)    Defendants' scheme to defraud Plaintiffs and the Class Members extended over a multiple year period and continues to the present.

### *predicate act of violation of Hobbs Act, 18 U.S.C. §1951*

283)    Defendants extorted and/or attempted to extort money from Plaintiffs and each and each other Member of the proposed Class.

284)    Defendants committed mail fraud in violation of 18 U.S.C. §1341 and wire fraud in violation of 18 U.S.C. §1343.    Specifically, Defendants verbally and by written communication, knowingly and willfully attempted to coerce Plaintiffs and the members of the proposed Class into settling alleged debts by threatening and/or bringing Civil Actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County which had no legal basis to be filed in Shelby County, Tennessee, nor were Defendants licensed to bring said actions in Tennessee.

285)   Defendants' extortionate threats of and/or filing of Civil Actions in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County against Plaintiff and the putative Class Members delayed, interrupted and/or adversely affected interstate commerce by causing Plaintiffs and the Class Members to expend time, resources and money responding to Defendants' actions, threats and extortion, and adversely affected Plaintiffs and the Class Members' ability to conduct interstate commerce due to the expenditure of funds and resources or the improper judgments and debts taken in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County. Further, Defendants have taken approximately 90 default judgments against prospective Class Members as a result of improperly filed Civil Actions brought in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County, adversely affecting those Class Members' ability to engage in interstate commerce based upon the impact of the default judgment on their credit score and history.

286)   Plaintiff and the Members of the proposed Class did rely on Defendants' threats and/or filing of Civil Actions in Shelby County, Tennessee, which were material to their decision to settle, to retain counsel to defend against these improper civil actions, or to allow themselves to be subject to entry of a default judgment in a court of law.

287)   As a direct and proximate result of Defendants' threats, Plaintiffs and the proposed Class Members' reliance on those threats, Plaintiff and the proposed Class Members suffered injuries, damages, or losses in an amount to be determined at trial.

288)   Defendants schemed to defraud Plaintiffs and the proposed Class Members extended over a multiyear period and continues to the present.

### _Defendants' scheme_

289) Defendants participated in the described scheme to extort and defraud knowingly, willfully, and with a specific intent to defraud Plaintiffs and the proposed Class Members into entering into settlement agreements under the fraudulent and extortionate threat of and/or filing of knowingly improper debt collection actions in the General Sessions Court of Shelby County, Tennessee.

290) The predicate acts of extortion, mail fraud, wire fraud, fraud or intentional misrepresentation, and violation of the Hobbs Act all constitute a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5). The predicate acts were not isolated events but related acts aimed at the common purpose and goal of deceptively intimidating Plaintiff and the proposed Class Members to settle alleged debts. Defendants were the common participants in the predicate acts; Plaintiffs and the proposed Class Members were the common victims.

291) Defendants' scheme to defraud Plaintiffs and the proposed Class Members has extended over a multi-year period and continues to the present. The predicate acts were the Enterprise's manner of conducting its business and they pose the threat of continuing racketeering activity if left unchecked.

292) As a direct and proximate result of Defendants' violation of 18 U.S.C. § 1962(c), Plaintiffs and the proposed Class Members have been injured in their business or property within the meaning of 18 U.S.C. § 1964(c).

293) As a result of their misconduct, Defendants are liable to Plaintiffs and the proposed Class Members for their damages and losses, in an amount to be determined at trial.

71

294)    In addition, pursuant to 18 U.S.C. § 1964(c), Plaintiffs and the proposed Class Members are entitled to recover threefold their damages, plus costs of the suit and attorney's fees from Defendants.

**FOURTH COUNT FOR RELIEF**
**CONSPIRACY TO VIOLATE RICO UNDER 18 U.S.C. § 1962(d)**

295)    Plaintiffs, on behalf of themselves individually and all others similarly situated, incorporate by reference all allegations contained in this Second Amended Complaint.

296)    Defendants conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct, and participate, directly or indirectly, in the conduct of, the affairs of the scheme through a pattern of racketeering activity as described in the Second Amended Complaint. This agreement was in violation of 18 U.S.C. § 1962(d).

297)    Defendants committed and caused to be committed a series of overt predicate acts of racketeering in furtherance of the conspiracy, including but not limited to the acts described in this Second Amended Complaint.

298)    As a direct and proximate result of the overt predicate acts of racketeering and of the Defendants' violation of 18 U.S.C. § 1962(d), Plaintiffs and the proposed Class Members have been injured in their business or property within the meaning of 18 U.S.C. § 1964(c).

299)    As a result of their conspiracy in violation of 18 U.S.C. § 1962(d), Defendants are liable to Plaintiffs and the proposed Class Members for their damages, injuries and losses, in an amount to be determined at trial.

300)    In addition, pursuant to 18 U.S.C. § 1964(c), Plaintiffs and the proposed Class

Members are entitled to recover threefold their damages, plus costs and attorney's fees from Defendants.

### FIFTH CAUSE OF ACTION
### INTENTIONAL MISREPRESNETATION OR FRAUD

301)   Plaintiffs, on behalf of itself and all others similarly situated, incorporate by reference all allegations contained in this Second Amended Complaint.

302)   Defendants committed Intentional Misrepresentation against Plaintiffs and the proposed Class Members.

303)   Defendants made representations to Plaintiffs and to putative class members which were material and were false regarding when Defendants threatened that they could bring debt collection actions against Plaintiffs and putative class members in the General Sessions Court of Shelby County, Tennessee.

304)   Defendants made representations to Plaintiffs and to putative class members which were material and were false when Defendants stated in correspondence, in e-mails, in General Sessions Warrants and supporting Affidavits, in statements of "Jurisdiction" attached to General Sessions Warrants that the Shelby County General Sessions Court was a proper venue and had personal jurisdiction over Defendants debt collection actions against Plaintiffs and putative class members.

305)   Defendants knew, based upon the multiple and numerous Motions to Dismiss based upon improper venue and lack of personal jurisdiction filed since 2009, the Consent Order of Dismissal dismissing Defendants action against First Preference for improper venue and lack of personal jurisdiction, the Order of Dismissal of Defendants lawsuit against Cereal ByProducts,

and the numerous times Defendants dismissed debt collection actions after putative class members threatened to file Motions to Dismiss for improper venue and lack of personal jurisdiction, that their representations about bringing debt collection actions against Plaintiffs and putative class members in Shelby County General Sessions Court were false.

306)    Alternatively, based upon the multiple and numerous Motions to Dismiss based upon improper venue and lack of personal jurisdiction filed since 2009, the Consent Order of Dismissal dismissing Defendants action against First Preference for improper venue and lack of personal jurisdiction, the Order of Dismissal of Defendants lawsuit against Cereal ByProducts, the numerous times Defendants dismissed debt collection actions after putative class members threatened to file Motions to Dismiss for improper venue and lack of personal jurisdiction, and Plaintiffs continued filing of the debt collection actions with no venue or jurisdictional support, Defendants made the representations about bringing debt collection actions against Plaintiffs and putative class members in Shelby County General Sessions Court recklessly.

307)    Plaintiffs and putative class members in states other than Tennessee did not know whether Defendants' representations were false and justifiably relied on them in either retaining Tennessee counsel to defend them or settling the alleged debt in the face of the extortionate threats of litigation and default judgments.

308)    As a direct and proximate result of Defendants' intentional misrepresentation, Plaintiffs and the members of the proposed Class suffered injuries, damages, and/or losses in an amount to be determined at trial.

309)    Plaintiffs and the members of the proposed Class are entitled to punitive damages because Defendants' conduct was malicious, intentional, fraudulent and reckless.

## SIXTH COUNT FOR RELIEF
## CONSPIRACY TO COMMIT INTENTIONAL MISREPRESENTATION

310)   Plaintiffs, on behalf of itself and all others similarly situated, incorporate by reference all allegations contained in this Second Amended Complaint.

311)   Defendants each knowingly and willfully conspired and agreed to engage in the scheme to intentionally misrepresent to Plaintiffs and Class Members the propriety of bringing a debt collection action in the General Sessions Court of Shelby County, Tennessee described in this Second Amended Complaint.

312)   Defendants committed and caused to be committed one or more overt and unlawful acts in furtherance of the conspiracy described in this Second Amended Complaint, including but not limited to threatening to file debt collection actions in the General Sessions Court despite that Court being an improper venue and lacking personal jurisdiction; actually filing General Sessions Warrants on sworn account in the General Sessions Court of Shelby County, Tennessee; signing sworn affidavits in support of knowingly improper General Sessions Warrants; signing sworn affidavits filed with the Court containing fictitious affiant names; filing as an attachment to the General Sessions Warrant a legal-looking statement of "Jurisdiction" despite knowing that the General Sessions Court of Shelby County lacked personal jurisdiction; threatening to and filing Interrogatories in a General Sessions Court of Tennessee; and taking default judgments in knowingly improper debt collection actions filed in the General Sessions Court of Shelby County, Tennessee.

313)    As a direct and proximate result of Defendants' conspiracy to commit intentional misrepresentation, Plaintiffs and the members of the proposed Class suffered injuries, damages, or losses in an amount to be determined at trial.

314)    Plaintiffs and the members of the proposed Class are entitled to punitive damages because Defendants' conduct was malicious, intentional, fraudulent and reckless.

**SEVENTH COUNT FOR RELIEF**
**AIDING AND ABETTING INTENTIONAL MISREPRESENTATION**

315)    Plaintiffs, on behalf of themselves individually and all others similarly situated, incorporate by reference all allegations contained in this Second Amended Complaint.

316)    Defendants knew about the schemes used to commit intentional misrepresentation against Plaintiffs and the proposed Class Members that are described in this Second Amended Complaint.

317)    Each Defendant actively participated in the schemes to commit intentional misrepresentation by knowingly providing encouragement and substantial assistance in perpetration of the intentional misrepresentations described in this Second Amended Complaint.

318)    As a direct and proximate result of Defendants' encouragement and substantial assistance in perpetration of the intentional misrepresentation, Plaintiffs and the members of the proposed Class suffered injuries, damages, or losses in an amount to be determined at trial.

319)    Plaintiffs and the Proposed Class Members are entitled to punitive damages because Defendants conduct was malicious, intentional, fraudulent and reckless.

### EIGHTH COUNT FOR RELIEF
### MALICIOUS PROSECUTION

320)   Plaintiffs incorporate by reference all allegations contained in this Second Amended Complaint

321)   Defendants brought suit against Plaintiffs in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County without proper jurisdictional or legal basis to bring suit in Shelby County, Tennessee.

322)   Defendants brought suit against Plaintiffs in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County with malice in an attempt to extort money from Plaintiffs by threatening the filing of an improper civil action in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County and then purposely threatening to and/or attempting to engage in written discovery to escalate Plaintiffs' expenses and costs.

323)   As a direct and proximate result of Defendants' malicious prosecution, Plaintiffs suffered injuries, damages for losses in an amount to be determined at trial.

324)   Plaintiffs are entitled to punitive damages because Defendants' conduct was malicious, intentional, fraudulent and reckless.

### NINTH COUNT FOR RELIEF
### ABUSE OF PROCESS

325)   Plaintiffs incorporate by reference all allegations contained in this Second Amended Complaint.

326)   Defendants filed and had served the Civil Warrant in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County against Plaintiffs with the ulterior motive of extorting and/or coercing Plaintiffs to settle an alleged debt instead of defending itself in litigation in an inconvenient, distant location.

327)   Defendants filed and had served a Civil Warrant in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County that Defendants knew was not proper in the regular prosecution of an action for collection of an alleged debt because the civil action was filed in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County and was done without any jurisdictional basis and with knowledge that the Court was an improper venue for the civil action.

328)   Defendants filed and had served civil warrants in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County for collection of a debt despite Defendant's knowledge that neither Defendant was licensed by the Tennessee Collection Service Board as required by T.C.A. §62-20-105(a).

329)   Defendants filed and had written discovery sent to Plaintiff and putative class members in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County with the ulterior motive of extorting and/or coercing Plaintiff and putative class members to settle an alleged debt instead of defending itself in litigation in an inconvenient, distant location.

330)   Defendants threatened to and/or filed and had served written discovery to Plaintiffs in the civil action in the General Sessions Court for the Thirtieth Judicial District of

Tennessee at Memphis, Shelby County that Defendants knew was not proper in the regular prosecution of an action for collection of an alleged debt because the civil action was filed in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County and was done without any jurisdictional basis and with knowledge that the Court was an improper venue for the civil action.

331)   As a direct and proximate result of Defendants' abuse of process, Plaintiffs suffered injuries, damages for losses in an amount to be determined at trial.

332)   Plaintiffs are entitled to punitive damages because Defendants' conduct was malicious, intentional, fraudulent and reckless.

**TENTH COUNT FOR RELIEF**
**VICARIOUS LIABILITY OF DEFENDANT NATIONAL BANKERS TRUST FOR**
**ACTIONS OF POWERS & STINSON AND/OR THE TRANSPORT FIRM**

333)   Plaintiffs incorporate by reference all allegations contained in this Second Amended Complaint.

334)   On or about June 24, 2011, National Bankers Trust and Powers & Stinson entered into a "Client Service Agreement". The June 2011 Client Service Agreement was between Powers & Stinson ("Agency") and National Bankers Trust ("Client") provided Powers & Stinson both the actual authority and the apparent authority to act as the agent for National Bankers Trust for the pursuit and collection of debts "as authorized" by National Bankers Trust. See Exhibit "--", June 24, 2011 "Client Service Agreement" between National Bankers Trust and Powers & Stinson.

335) The June 2011 Client Service Agreement between agent Powers & Stinson and client National Bankers Trust authorized that all debts would be collected by agent Powers & Stinson on behalf of Client National Bankers Trust. See Exhibit "D", June 24, 2011 "Client Service Agreement" between National Bankers Trust and Powers & Stinson

336) The June 2011 Client Service Agreement between agent Powers & Stinson and client National Bankers Trust clearly "authorizes Agency [Powers & Stinson] to settle accounts" on behalf of National Bankers Trust under specific requirements required by National Bankers Trust pursuant to the Client Service Agreement. Id.

337)   The June 2011 Client Service Agreement between agent Powers & Stinson and client National Bankers Trust clearly states that all "debt collected by Agency [Powers & Stinson]" will be "on behalf of Client [National Bankers Trust]..." Id.

338)   The June 2011 Client Service Agreement between agent Powers & Stinson and client National Bankers Trust gave National Bankers Trust the right and power to control the manner in which Powers & Stinson conducted the debt collections for National Bankers Trust. Id.

339)   The June 2011 Client Service Agreement between agent Powers & Stinson and client National Bankers Trust contained specific requirements imposed upon Powers & Stinson by National Bankers Trust for debt collection activities, including specific procedures required by National Bankers Trust for the percentage of any collections allowable by National Bankers Trust, specific procedures to be followed for debt collections against debtors in bankruptcy or

collections actions, specific procedures required by National Bankers Trust for disbursement of funds, pursuant to sections (A) – (G) of the Client Service Agreement. Id.

340) The June 2011 Client Service Agreement between agent Powers & Stinson and client National Bankers Trust clearly states that Powers & Stinson as National Bankers Trust's agent was authorized "…to sign and deposit all checks, bank drafts, cash and/or money orders whether designated to Client [National Bankers Trust] or Agency [Powers & Stinson] whether designated to Client or Agency." Id.

341) Powers & Stinson not only had actual and apparent authority to handle debt collections actions on behalf of National Bankers Trust, but had pursuant to the Client Service Agreement express authority to do so on behalf of National Bankers Trust. Id.

342)   A representative of Powers & Stinson in each "Affidavit of Sworn Account" filed on behalf of National Bankers Trust clearly stated to the General Sessions Court and to Class Plaintiffs and all putative class members that it had actual, apparent and express authority to pursue debt collection activities on behalf of National Bankers Trust by swearing under the following:

1.   That I am employed by Powers & Stinson, Inc. which has been retained by National Bankers Trust Corporation for the collection of past due accounts. I currently serve as … for Powers & Stinson, Inc.

2).   In my capacity, I am familiar with the books, accounts and records of Powers & Stinson as assigned by National Bankers Trust Corporation to Powers & Stinson, Inc.

See Exhibit "L" and "R".

343)     Accordingly, Defendant National Bankers Trust is vicariously liable for all debt collection actions taken by Powers & Stinson employees, and the agents and attorneys of Powers & Stinson, against Plaintiffs and all putative class members.

344)     As a direct and proximate result, Plaintiffs suffered injuries and damages for losses in an amount to be determined at trial.

345)     Plaintiffs are entitled to punitive damages because Defendants' conduct was malicious, intentional, fraudulent and reckless.

## ELEVENTH COUNT FOR RELIEF
## LIABILITY OF DEFENDANT NATIONAL BANKERS TRUST FOR ACTIONS OF E.A. NICHOLS UNDER THEORIES OF VICARIOUS LIABILITY AND RESPONDEAT SUPERIOR

346)     Plaintiffs incorporate by reference all allegations contained in this Second Amended Complaint.

347) Defendant E.A. "Charlie" Nichols was the corporate counsel and an employee of National Bankers Trust from March 15, 2010 – May 10, 2011, and again from June 20, 2011 – August 19, 2011.

348)     Upon information and belief, Defendant E.A. Nichols, while in-house corporate counsel for National Bankers Trust, filed over 80 of those improper Civil Actions on sworn account on behalf of National Bankers Trust in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County against entities whose addresses on the Civil Warrants were clearly outside Shelby County, Tennessee.

349)     While an employee of and in-house corporate counsel for National Bankers Trust, E.A. Nichols incorporated Defendant The Transport Firm, Inc. on March 29, 2011 in the State of Tennessee. (See Exhibit "A", Charter of The Transport Firm, Inc.).

350)     While an employee of and in-house corporate counsel for National Bankers Trust, E.A. Nichols incorporated "The Law Office of E.A. Nichols, P.C." on or about March 22, 2011. See Exhibit "", Charter of The Law Office of E.A. Nichols, P.C."

351)     National Bankers Trust In-house Corporate Counsel and Employee Defendant E.A. Nichols incorporated "The Nichols Law Firm",  and/or "The Law Office of E.A. Nichols, P.C." on or about March 22, 2011. See Exhibit "B", Charter of the Law Office of E.A. Nichols, P.C.)

352) Defendant National Bankers Trust and Defendant The Law Offices of E.A. Nichols, P.C. maintained, shared and worked out of the same principal office location in Tennessee in 2011. Id.

353)     In 2011, while simultaneously (1) an employee and in-house corporate counsel for National Bankers Trust, (2) outside counsel for Powers & Stinson with a Powers & Stinson e-mail account, and (3) managing attorney of The Nichols Law Firm, Defendant E.A. Nichols filed multiple improper Civil Actions on sworn account in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County against out-of-state corporations in support of Defendants' continuing debt collection scheme (General Sessions Civil Warrant No. 1509852 Powers & Stinson v. American Fashion Clothing); See also, General Sessions Civil Warrant No. 1504617, Powers & Stinson v. Southern Track; General Sessions Civil Warrant No.

83

1504673, <u>Powers & Stinson v. Polyreps</u>, General Sessions Civil Warrant No. 1504617, <u>Powers & Stinson v. Ruiz Foods</u>.

354)    Defendant E.A. Nichols was the Corporate Counsel for National Bankers Trust when Defendant National Bankers Trust entered into its Client Service Agreement with Defendant Powers & Stinson.

355)    IN 2010 and 2011, upon information and belief, Defendant E.A. Nichols, while in-house corporate counsel for National Bankers Trust, filed over 85 improper Civil Actions on sworn account on behalf of National Bankers Trust in the General Sessions Court for the Thirtieth Judicial District of Tennessee at Memphis, Shelby County against entities whose addresses on the Civil Warrants were clearly outside Shelby County, Tennessee.

356)    While filing each of these debt collection actions on Sworn Account in the Shelby County General Sessions Civil Court against out-of-state corporations for Powers & Stinson and National Bankers Trust, the official address for Defendant E.A. Nichols with the General Sessions Court Clerk of Shelby County, Tennessee was that of Defendant National Bankers Trust (8245 Tournament Drive, Suite 120, Memphis, TN 38125).

357)    Further, the official address for Defendant E.A. Nichols with the General Sessions Civil Court Clerk of Shelby County, Tennessee for every improper debt collection action filed on behalf of Powers & Stinson and/or The Transport Firm throughout 2011 and 2012 pursuant to the extortionate debt collection scheme was that of Defendant National Bankers Trust (8245 Tournament Drive, Suite 120, Memphis, TN 38125)..

358)     At all times relevant hereto, Defendant E.A. Nichols was employed by and/or was an agent or servant of Defendant National Bankers Trust.

359)     After leaving his employment with National Bankers Trust, E.A. Nichols remained the registered agent of National Bankers Trust in Tennessee until November 2011.

360)     After leaving his employment with National Bankers Trust, E.A. Nichols continued to repeatedly file improper debt collection actions in the Shelby County General Sessions Court on behalf of National Bankers Trust.

361)     Upon information and belief, after the incorporation of Powers & Stinson and The Nichols Law Firm, E.A. Nichols as the attorney and agent of National Bankers Trust filed 19 presently known debt collection actions for National Bankers Trust in the General Sessions court of Shelby County, Tennessee.

362)     Defendant National Bankers Trust is further responsible for all of the acts committed by Defendant E.A. Nichols on behalf of National Bankers Trust's debt collection interests both during his employment and after leaving the employ of National Bankers Trust as he was acting as National Bankers Trust's employee and/or agent and attorney under the theories of respondeat superior and/or vicarious liability.

363)     The above-described acts of Defendant E.A. Nichols were committed within the scope of his employment with Defendant National Bankers Trust and/or as the agent of National Bankers Trust in that they were committed while he was an employee and/or agent and were done in furtherance of Defendant National Bankers Trust's business and financial interests.

364)   As Defendant E.A. Nichols' employer and/or principal, Defendant National Bankers Trust is responsible for all of the acts committed by Defendant E.A. Nichols within the scope of his employment and/or agency under the theories of respondeat superior and vicarious liability.

365)   As a direct and proximate result, Plaintiffs suffered injuries and damages for losses in an amount to be determined at trial.

366)   Plaintiffs are entitled to punitive damages because Defendants' conduct was malicious, intentional, fraudulent and reckless.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs seek the following remedies:

1)   For an Order certifying the Class and any appropriate sub-Classes thereof under the appropriate provisions of Federal Rule of Civil Procedure 23, and appointing Plaintiffs and their counsel to represent the Class;

2)   Damages in an amount to be proven at trial, including but not limited to compensatory and consequential damages;

3)   Treble damages under RICO, 18 U.S.C. §§ 1961 et seq.

4)   Punitive damages on any and all causes of action permitting such damages;

5)   Actual or statutory damages at the election of the proposed Class Members;

6)      Restitution of all money that Defendants obtained from members of the Plaintiff Class in settlements based on fraudulent statements and extortionate threats;

7)      Reimbursement of all money that members of the Plaintiff Class spent on legal representation, court costs and other expenses that would have been avoided if not for Defendants' false, fraudulent, deceptive, misleading, and/or negligent statements, representations, actions and/or omissions;

8)      The imposition of a constructive trust on all monies provided by the proposed Class Members to Defendants and all assets acquired with such funds;

9)      Equitable accounting, including accounting to proposed Class Members for any and all gains, profits, and advantages derived by Defendants from the scheme, and any and all proposed Class Members' litigation expenses, including reasonable attorney fees and the costs of this action;

10)     An attachment against the Defendants' property, attorney fees, and costs as provided by law;

11)     Injunctive relief preventing sale or disposition of Defendants' assets acquired through the scheme;

12)     Injunctive relief to stop the scheme presently occurring and in the future;

13)     Injunctive relief to reveal the identities of all known proposed Class Members;

14)     Attorney fees and costs incurred by members of the proposed Class in settling and/or otherwise responding to claims brought by Defendants in the General Sessions Courts of Shelby County, Tennessee;

15)     Dismissal of all pending Civil Actions improperly filed in the General Sessions Court of the Thirtieth Judicial District of Tennessee at Memphis, Shelby County against members of the proposed Class;

16)     Attorney fees and costs incurred by Plaintiffs and the proposed Class in prosecuting this action;

17)     Pre-judgment and post-judgment interest as provided by law; and

18)     Additional and/or alternative relief as the Court may deem to be just, equitable and appropriate.

Respectfully submitted,

**McNABB, BRAGORGOS & BURGESS, PLLC**

/S/ LELAND M. McNABB #7551
/S/ R. SCOTT MCCULLOUGH #19499
/S/ ANDREW J. DROKE #32079
Attorneys for Individual and Class Plaintiffs First
Preference Products Corp. and Cereal Byproducts
81 Monroe, Sixth Floor
Memphis, Tennessee 38103
Telephone: (901) 624-0640
Fax: (901) 624-0650
smccullough@mbb-law.com